145 So.2d 239 (1962)
STATE of Florida, On the Relation of the Auchter Company, a Corporation, Relator,
v.
Charles A. LUCKIE, As Judge of the Circuit Court of Duval County, Florida, and Robert C. Swain, Respondents.
No. D-431.
District Court of Appeal of Florida. First District.
September 18, 1962.
*240 Barnes & Slater, Jacksonville, for relator.
Carl G. Swanson and Evan T. Evans, Jacksonville, for respondents
WIGGINTON, Acting Chief Judge.
Relator has filed its suggestion for issuance of a writ prohibiting respondent Honorable Charles A. Luckie, as Judge of the Circuit Court of Duval County, from continuing to exercise jurisdiction in a civil action instituted in that court by respondent Robert C. Swain against the Auchter Company. The action sought to be prohibited is for the recovery of damages arising from personal injuries suffered by Swain as a result of Auchter's negligence. Relator contends that the Workmen's Compensation Act of this State provides the exclusive remedy for recovery of such compensation to which Swain is entitled as a result of the injuries suffered by him, and that the Circuit Court of Duval County is without jurisdiction to maintain the action.
The undisputed facts present in the record before us reveal the following situation. The Auchter Company is a domestic corporation and a licensed general contractor engaged in the building and construction industry. It entered into a contract with Sav-A-Stop, Inc., a corporation, by which Auchter agreed to construct on land owned by it an office building and warehouse in accordance with plans and specifications prepared by an architect and agreed upon by the parties. Under the terms of this agreement Sav-A-Stop bound itself to lease the completed improvements from Auchter for a stipulated monthly rental over a stated period of time. Auchter commenced construction of the building and warehouse contemplated by its agreement with Sav-A-Stop, and in this connection utilized its own equipment and personnel consisting of more than three employees. In accordance with the applicable provisions of law Auchter procured workmen's compensation insurance covering all its employees engaged in the work. Auchter entered into a written contract with Florida Steel Corporation by which the latter agreed to furnish and erect the structural steel required by the plans and specifications prepared for construction of the building and warehouse. This document refers to Auchter as the general contractor, *241 and to Florida Steel Corporation as the sub-contractor. Florida Steel employed more than three persons in the discharge of its obligations under its contract with Auchter and in accordance with the applicable provisions of law procured workmen's compensation insurance covering all of its employees, including Swain. In addition, and apparently as a precautionary measure, Auchter procured an additional insurance policy providing workmen's compensation benefits to all workers employed in the construction of the improvements by whomever employed, including the employees of Florida Steel. Swain, while acting in the scope of his employment, was injured as a result of the alleged negligence of Auchter. He received and accepted the benefits to which he was entitled under the Workmen's Compensation insurance policy held by his employer, Florida Steel. He subsequently brought suit in the Circuit Court of Duval County against Auchter, charging the latter as a third party tort feasor with negligence which proximately caused the injuries suffered by him. It is the continuance of that action which Auchter now seeks to prohibit by the petition filed in this court.
The pertinent statute which controls our decision is Section 440.10, F.S.A., which provides as follows:
"(1) Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for and shall secure the payment to his employees of the compensation payable under §§ 440.13, 440.15 and 440.16. In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.'
From the facts recited above it seems apparent that Auchter, as the primary employer of all persons directly employed by it in the construction of the improvement under consideration, was required by the first sentence of the above quoted section of the statute to secure the payment to its employees of the compensation provided by the Act. The crucial question posed for our decision is whether under the facts of this case Auchter is the statutory employer of those persons employed by Florida Steel Corporation. The answer to this depends on whether Auchter can be held to be a contractor, and Florida Steel a subcontractor, within the purview of the above quoted section of the statute. If so, then the Workmen's Compensation Act provides the exclusive remedy against Auchter for the injuries sustained by Swain, and the Circuit Court would have no jurisdiction of the action now pending before it. Under these circumstances a writ of prohibition against maintenance of the suit would properly lie.[1]
It seems clear from the facts in this case that Auchter occupies the position of primary employer and owner of the land and the improvements sought to be constructed thereon. The fact that it is also a licensed general contractor engaged in the construction industry would appear to be of no importance, and has no controlling effect upon the interpretation to be placed upon the pertinent statute under consideration. In order for Auchter to be considered a contractor within the meaning and intent of the statute it would have to be bound by a contractual obligation to build for some third party the improvements which were in the process of construction at the time Swain was injured. By the same token Florida Steel could not be held to be a *242 subcontractor within the meaning of the statute unless it can be established that Auchter passed on to Florida Steel an obligation under a contract for which Auchter was primarily obligated.[2]
Auchter contends in this proceeding that it comes within the definition of "contractor" as contained in the pertinent statute for the reason that it was under a written contract with Sav-A-Stop to construct the office building and warehouse in accordance with agreed plans and specifications prepared by an architect. The primary purpose and legal effect of the contract in question is to create a relationship of landlord and tenant whereby Auchter, as owner and landlord of the improvements yet to be constructed, would lease the property to Sav-A-Stop, as tenant, and that the latter would occupy the premises and pay an agreed rental over a stated period of years. Auchter's obligation to construct the building and warehouse was merely incidental to the primary purpose of the contract. This is not the type of contractual obligation contemplated by the statute. In West v. Sampson[3] our Supreme Court indicated, if it did not specifically so hold, that the type of contractual obligation by which one must be bound in order to be held a contractor within the meaning of the statute is the conventional type of contract entered into between a general contractor and an owner of property for whose benefit improvements are to be constructed or specified work is to be performed, by which the contractor agrees for a stated consideration to construct an improvement or perform the work in accordance with agreed plans and specifications.
From the facts shown by this record we are compelled to hold that under the above quoted statute Auchter must be held to be an owner and primary employer, and that Florida Steel is an independent contractor engaged for the specific purpose of performing one identifiable phase of the work.
In the Floyd case[4] an owner of a building sought to construct an addition thereto without employing a general contractor to perform the work. A part of the construction was contracted to an independent contractor. It was there held that an employee of the owner who was injured as a result of negligence of the independent contractor could maintain against the latter a common law action in tort for recovery of the damages suffered by him as a result of such negligence. This decision was in conformity with the holding of that court in the earlier case of Cromer v. Thomas, in which the same conclusion was reached upon substantially the same facts.[5] Since it has been held that an employee of an owner may maintain an action at law against an independent contractor, for injuries sustained as a result of the negligence of such independent contractor, it would follow that an employee of an independent contractor may maintain against an owner an action at law for damages suffered as a result of the latter's negligence.[6] That is the situation we find to be present in the case we now review.
In the case of West v. Sampson, supra, a licensed general contractor and a corporation in which he was not interested each owned an undivided one-half interest in a parcel of land. The corporation conveyed its interest in the land to the contractor in accordance with an agreement whereby the latter agreed to construct on the land a dwelling house which would immediately be placed on the market and sold. It was agreed that the corporation would be paid for its one-half interest in the land out of *243 the proceeds of the sale after the dwelling was completed and sold. The contractor employed no personnel of his own but entered into separate contracts with others who performed the various phases of the work. An employee of the roofing contractor was injured in the course of his employment and sought payment of workmen's compensation benefits from the owner on the theory that he was the general contractor and statutory employer of all persons engaged in the work within the purview of F.S. Section 440.10, F.S.A. It was insisted that the owner had obligated himself under his contract with the corporation to construct the dwelling and pay the corporation for its interest in the land out of the sale proceeds of the house, and therefore was a "contractor" liable for workmen's compensation benefits.
In that case the Supreme Court affirmed the holding of the deputy commissioner that the owner was a primary employer and was not a contractor, and that the independent roofing contractor was not a subcontractor, within the meaning and intent of the statute here considered. As hereinabove stated this conclusion was predicated upon the holding that the contract between the owner and the corporation was not the type of construction contract required by the statute in order to clothe the owner with the status of contractor. It would necessarily follow that under those circumstances the owner would not be insulated from tort liability for any negligence which might result in damage to employees of the independent contractor.
For the reasons hereinabove stated we are of the view and so hold that Swain was not the statutory employee of Auchter, and that he is not precluded from maintaining the action at law instituted by him for recovery of the damages suffered as a result of alleged negligence committed by Auchter during the construction of the improvements here considered. The writ of prohibition prayed for in the suggestion filed herein is denied.
STURGIS, J., concurs.
RAWLS, J., dissenting.
RAWLS, Judge (dissenting).
I respectfully dissent to the able opinion authored by Judge WIGGINTON.
As stated in the majority opinion, in order for Auchter to be considered a contractor within the meaning and intent of the statute it would have to be bound by a contractual obligation to build for some third party the improvements which were in the process of construction at the time Swain was injured.
The record discloses that in the year 1961, Sav-A-Stop, Inc., entered into negotiations with the Auchter Company, whose usual business is that of a general contractor in the building and construction industry, for the construction of a warehouse and office building on a parcel of land owned by Sav-A-Stop; that subsequently, soil borings and engineering studies revealed that the land owned by Sav-A-Stop was not suitable for the construction of such building. After viewing numerous parcels of land, it was decided between the parties that a parcel of land owned by Auchter was the most suitable location for said proposed building. Thereupon, Auchter entered into an agreement with Sav-A-Stop which incorporated among other things, the following important provisions:
(1) Construction of Building. The lessor (Auchter) agrees that within the period of seven months following the date hereof, it will cause the Auchter Company to construct upon the land a building and improvements in good and workmanlike manner, all substantially according to plans and specifications entitled: Office and warehouse for Sav-A-Stop * * *
(2) Rental. The lessee (Sav-A-Stop) shall pay to the lessor as rent for the land, building and improvements leased hereunder an annual rental equal to 9% of the total of (a) $10,000, being the agreed value of the land, and (b) the "certified cost" of the building improvements. The "certified cost" *244 of the building and improvements means the actual cost to the lessor of the labor and materials (including amounts paid to subcontractors and architect's fees and engineering charges paid or incurred in the preparation of the plans and specifications) used in the construction of the building and improvements, plus eight per cent of the total of such costs which is agreed to cover the cost of financing the construction, the contractor's overhead, and the contractor's profit.
In Jones v. Florida Power Corp.[7] Justice Roberts speaking for the Supreme Court, clearly stated the rule in Florida when he said on page 289 of 72 So.2d:
"* * * [T]he clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. To `sublet' means to `underlet', Webster's New International Dictionary; in the context in which it is here used, the effect of subletting is to pass on to another an obligation under a contract for which the person so `subletting' is primarily obligated."
Applying the foregoing rule to the facts in the instant cause we find: 1. Auchter entered into a contractual obligation to construct a building according to Sav-A-Stop's plans and specifications, a portion of same encompassed the furnishing and erection of certain steel work; 2. Auchter subcontracted that portion of its primary obligation with Sav-A-Stop to Florida Steel.
In my opinion, the fact that Auchter is a licensed general contractor constitutes the primary subject matter of the contract and its ownership of the land is merely incidental to the overall transaction.
The majority opinion construes West v. Sampson[8] as holding that the only type of contractual obligation by which one must be bound in order to be held a contractor within the meaning of the statute is the conventional type of contract entered into between a general contractor and an owner of property. I do not agree with this construction. There, the facts are succinctly stated by Justice O'Connell as follows:
"The principal evidence as to West's status as a contractor or primary employer is found in his own testimony. West testified that a partnership composed of himself and a corporation, in which he had no interest, owned the subdivision in which the house involved here was being constructed; West built houses on lots in the subdivision on a speculative basis for later sale; when he determined to build such a house the corporation deeded its half interest in a lot to West so that title to the lot was in his name alone; he then contracted with others to do all work necessary to the construction of the house; he had no employees; the corporation had nothing whatsoever to do with the construction; when he sold the completed house he paid the corporation for one half of the price of the lot; and that he executed no written agreement or evidence of indebtedness to the corporation in exchange for its deed to its one-half interest in the lot, but it was understood that he would build a house thereon and sell it, at which time he would pay the corporation for one half of the value of the lot."
It appears that the following facts were the controlling features of the West case: 1. West built the houses on a speculative basis for his own purposes. 2. The corporation had the primary interest of being paid for one-half of the value of the lot. 3. West had no primary obligation under any contract which he was passing on to Perry McGee. Such is not the situation in the instant cause.
*245 The net effect of the majority opinion is to hold that a general contractor is not liable for workmen's compensation as to its independent contractors (subcontractors in the normal industry usage) if it owns the land upon which the construction is being made. Such a narrow interpretation does not seem to meet the legislative intent, nor does it appear to meet prior interpretations which have clearly stated that the purpose is to protect employees of irresponsible and uninsured subcontractors.[9] As stated in Miami Roofing & Sheet Metal Co. v. Kindt[10] construing Section 440.10:
"* * * It will be noted that it is not specifically provided that the liability of the contractor shall exist whether or not the subcontractor has the status of `independent contractor.' But we think it is fair to assume that such was the legislative intent, as any other interpretation would result in inequalities among the workmen on the same job, all of whom are, in fact, engaged in fulfilling the general contractor's contract work, even though some of the workmen are responsible, insofar as the method of accomplishing the work is concerned, only to their own immediate employer. * * *
"We hold, therefore, that a contractor is liable for and shall secure compensation to the employees of his subcontractors, even though such subcontractors have the status of independent contractors, and that if such contractor has, in fact, secured such compensation, either directly or indirectly through the subcontractor, the remedy under the Act is exclusive.
"* * * The plaintiff contends that `if C.F. Wheeler, Builder, and College Homes, Inc., were in truth and fact the same legal entity, then C.F. Wheeler was the owner of the property involved and could not possibly contract with himself, and hence could not be a general contractor,' and that, therefore, it was proper to submit to the jury the question of whether or not the subcontracts were, in fact, executed by the owner of the property and not by a `general contractor.' This contention cannot be sustained."
The court's reasoning here was not based upon the fact that there were two separate legal entities contracting with each other. Instead the opinion reviewed the duties and liabilities of the "contractor" under Chapter 440 and the statutory immunities which evolved from an acceptance of those duties. The opinion stated:
"* * * Certainly, then, if the plaintiff were here seeking to hold the general contractor, C.F. Wheeler, Builder, to its statutory liability under Section 440.11, we do not think that the general contractor could claim a `third party' status, with the defensive advantages thereof, by pleading the facts here relied on by plaintiff. Similarly, we do not think plaintiff can impose a `third party' status on the general contractor in the situation here involved and thereby remove the aura of `common employer' whose existence gives the work as a whole the character of a common job or employment."
Numerous are the cases which have held that the immunities of the Law inure to those who accept the liabilities imposed therein. In my opinion Auchter is required by F.S. § 440.10, F.S.A., to secure workmen's compensation benefits to all employees of any employer to whom Auchter has sublet any part of the contractual obligation existing between Auchter and Sav-A-Stop, unless, of course, such compensation is otherwise secured. Auchter cannot escape this statutory liability merely because it owns the property upon which the building will be built. Had Auchter not secured payment of compensation to these employees, it would have been subject to the penalties of *246 § 440.11; but, since it did, the Auchter Company should be entitled to the immunity of exclusive liability and not subjected to third party tort-feasor liability.
I, therefore, dissent.
NOTES
[1] Winn-Lovett Tampa, Inc. v. Murphree, (Fla. 1954) 73 So.2d 287.
[2] Jones v. Florida Power Corp., (Fla. 1954), 72 So.2d 285.
[3] West v. Sampson, (Fla. 1962) 142 So.2d 74.
[4] Floyd v. Flash Welding Company, (Fla. App. 1961) 127 So.2d 129.
[5] Cromer v. Thomas, (Fla.App. 1960) 124 So.2d 36.
[6] Jones v. Florida Power Corp., see note 2.
[7] Jones v. Florida Power Corp., See Note 2.
[8] West v. Sampson, See Note 3.
[9] Stone v. Buckley, (Fla.App. 1961), 132 So.2d 613.
[10] Miami Roofing & Sheel Metal Co. v. Kindt, (Fla. 1950) 48 So.2d 840, 843, 844.