502 So.2d 1325 (1987)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Appellant,
v.
Gerald UNDERWOOD and Darlene Underwood; Robert L. Ackerman, Inc., a Florida Corporation, et al., Appellees.
No. 85-688.
District Court of Appeal of Florida, Fourth District.
February 25, 1987.
*1326 Rosemary Wilder and Richard A. Sherman of Law Offices of Richard A. Sherman, Fort Lauderdale and Robert M. Klein of Stephens, Lynn, Chernay & Klein, P.A., Miami, for appellant.
Barbara J. Compiani of Edna L. Caruso, P.A., and Phil Houston of Kocha & Houston, P.A., West Palm Beach, for appellees-Underwood.
DOWNEY, Judge.
This litigation had its genesis in a suit by appellees, Gerald and Darlene Underwood, to recover damages for injuries that Gerald sustained while working for an electrical contractor, Robert J. Ackerman, Inc., (Ackerman) on a job that Ackerman was performing for Florida Power & Light Co. (FP & L). During trial the Underwoods settled with FP & L for a total of $462,500, payable $162,500 in cash and assignment of an indemnity contract in which Ackerman indemnified FP & L up to a maximum of $300,000 against negligence arising out of the work.
The Underwoods then brought this suit against Ackerman for $300,000 based upon Ackerman's contractual indemnity contract. They also sued National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National) for $300,000, based upon National's breach of contract in denying coverage to FP & L in the original suit, referred to here as Underwood # 1. Underwood's complaint alleged that National had issued a policy of general liability insurance to Ackerman with an endorsement naming FP & L as an insured. National contested this allegation, claiming that the certificate of insurance attached to the complaint did not show that FP & L was an additional insured. As a result, the Underwoods requested that the court determine the rights and obligations of each party under the insurance contract, and award them damages plus prejudgment interest, reasonable attorney's fees and taxable costs.
Ackerman and National moved to dismiss the complaint, arguing, among other things, that, since Ackerman had paid workers' compensation benefits to Gerald Underwood this action was barred. The motion also challenged the validity of the *1327 assignment of rights by FP & L to the Underwoods, the effectiveness of the indemnity agreement, and FP & L's status as an insured. When the motion to dismiss was denied, Ackerman and National answered and counterclaimed for a declaration of rights under the National policy. In answer to the counterclaim the Underwoods asserted, by way of affirmative defenses, that National's attorneys had stipulated in a pretrial stipulation in Underwood # 1 that FP & L was a named insured in the National policy and that National was now estopped from taking an inconsistent legal position.
The Underwoods moved for partial summary judgment and the court entered an extensive order granting partial summary judgment and partial final judgment. In this order, the court found that the indemnity agreement expressed the clear and unequivocal intent to indemnify FP & L against its own negligence. The court also noted that National had admitted insurance coverage for Ackerman. As to coverage for FP & L, the court took judicial notice of the fact that National had moved to dismiss under the nonjoinder statute in Underwood # 1 and such motion is only made if there is no question as to coverage. The court also judicially noticed the fact that it had been stipulated in the pretrial stipulation in Underwood # 1 that FP & L was a named insured on the National policy and, therefore, National was equitably estopped from denying coverage to FP & L. Finally, the court ordered that the Underwoods recover $162,500 from the defendants.
Thereafter, the Underwoods moved for a second summary judgment, which was granted, finding that Ackerman and National were liable for the additional $300,000 due on Underwood's original claim against FP & L. The court found that there was no genuine issue of fact as to the good faith and reasonableness of Underwood's settlement with FP & L and entered judgment against Ackerman for the balance of $137,500 and against National for $300,000 and against both for prejudgment interest. Finally, an order was entered allowing the Underwoods attorney's fees of $40,000 after a hearing in which expert testimony was adduced applying Rowe[1] standards for determining attorney's fees.
From the two orders granting summary judgment and the order allowing fees and costs National alone has perfected this appeal.
In its first point National contends that the Underwoods were precluded by the Workers' Compensation Law from maintaining a suit against FP & L for damages arising out of injuries incurred on the job in question. We reject this contention as the Workers' Compensation Law does not immunize FP & L under the facts of this case because FP & L was not a contractor within the meaning of section 440.10, Florida Statutes (1985), but a third party. Third parties are, of course, not immune to suit by workers injured on a job covered by workers' compensation benefits. Vanlandingham v. Florida Power & Light Co., 154 Fla. 628, 18 So.2d 678 (1944). Under the facts of this case FP & L was not a contractor because in order to qualify as a contractor for workers' compensation immunity, a company's primary obligation in performing a job or providing a service must arise out of a contract. Southern Sanitation v. DeBrosse, 463 So.2d 420 (Fla. 1st DCA 1985). In this case, regardless of whether it has a contract or not, FP & L's primary obligation, as a public utility, is to provide electric power to its customers as provided by statute. Florida Power & Light Co. v. Brown, 274 So.2d 558 (Fla. 3d DCA 1973). See also Williams v. Pan American World Airways, Inc., 448 So.2d 68 (Fla. 3d DCA 1984).
National also contends that the attorney's fee award was excessive and not based upon substantial evidence. We find no merit in that argument. There was conflicting evidence adduced, some of which would have supported an even larger fee. Furthermore, all of the Rowe criteria were considered by the witnesses and the trial court.
*1328 Two judgments were entered below, one against Ackerman and one against National, both for the total sum due. National contends this was error because it may be subjected to double recovery by the Underwoods. Although the record shows that National agreed to this procedure, it is clear that recovery on both judgments was not intended and the Underwoods agreed they could not recover on both. Nevertheless, it is not necessary to take any specific action to rectify this oversight because a new judgment will ultimately be entered in view of our disposition of this appeal.
National presents several other arguments on the merits to support its contention that the trial court's ruling was erroneous. It argues that the indemnity contract between FP & L and Ackerman is not effective because it purports to indemnify FP & L against its own negligence, that such contracts are not favored in law, and that they are against public policy. It further contends the stipulation of counsel for National in Underwood # 1 is not binding because counsel did not continue to represent National in the litigation. It also claims that stipulations in one case are not effective in another case. We have carefully considered all of these contentions and the authorities cited therefor and find them not controlling in this case. We hold the indemnity contract is clear and not subject to the common law rule applicable to indemnification in tort actions. Barnett Bank of Miami v. Mutual of Omaha Insurance Co., 354 So.2d 114 (Fla.3d DCA 1978). Furthermore, we hold that a stipulation entered into in one action may be used in another unless limited by its terms. Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1 (Fla. 1971).
Nevertheless, in our considered opinion, appellant's second point, that the trial court erred in taking judicial notice of a certain stipulation and motion to dismiss from Underwood # 1, requires reversal and further proceedings. In order to conclude in this case that there was no genuine issue of material fact, the trial court, pursuant to section 90.202(6), Florida Statutes (1985), took judicial notice of a stipulation by National in Underwood # 1 that National's policy afforded coverage for FP & L. In addition, judicial notice was also taken of a motion to dismiss filed by National seeking to dismiss it from said suit in view of the nonjoinder statute, section 627.7262, Florida Statutes (1983), which the court considered an implicit admission of coverage.
The problem presented is the manner in which the trial court purported to take judicial notice of the aforementioned important facts from Underwood # 1. The statutory authority for taking judicial notice of pleadings or documents contained in said prior case is section 90.202(6) of the evidence code, which simply codified the case law at the time. We know that judicial notice should be exercised with great caution because not every fact is the subject of proof by judicial notice  only those matters of common and general knowledge. Nielsen v. Carney Groves, Incorporated, 159 So.2d 489 (Fla.2d DCA 1964). If the court proposes to take judicial notice of documentary evidence, such as pleadings in another case, whether the same court or not, copies of said documents judicially noticed must be brought into the record of the case under consideration. § 90.204(3), Fla. Stat. (1985). The proper way to handle judicial notice of such records is aptly described in Kelley v. Kelley, 75 So.2d 191 (Fla. 1954). See also Bergeron Land Development, Inc. v. Knight, 307 So.2d 240 (Fla.4th DCA 1975). The problem with a trial judge's browsing through his own court records or calling upon his memory of other cases is that the appellate court is restricted to the record before it to reach its determination of the soundness of the decision below. Absent those judicially noticed records or documents, such review is impossible. Unfortunately, in the present case, while the judicially noticed records were discussed at some length, none of them were brought into the record and, thus, we do not have a sufficient record to rule on the propriety of their consideration. Contrary to appellees' contention, we find this oversight was not waived by National. A sufficient objection was made at the summary judgment hearing to support appellate review.
*1329 Accordingly we reverse the judgments appealed from and remand the cause to the trial court for further proceedings, which may include, if the parties be so advised, a further motion for summary judgment involving the matters which were the subject of the prior ineffective attempt at judicial notice.
REVERSED AND REMANDED with directions.
WETHERINGTON, GERALD T., Associate Judge, concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
When this case was argued in July, I felt the summary judgment should be reversed because a coverage question existed. Sometimes it is more difficult for me to direct my focus upon a case several months after oral argument than at the time of oral argument. Other times, as here, the opportunity to review it again after oral argument results in a clearer view. After another look, I am still comfortable with a reversal, albeit for a different reason than that given by the majority.
First, the only judicial notice issue before the trial court  as I read the transcript of the hearing of February 15, 1985  was whether the trial court should take judicial notice of what was in another court file. The majority opinion appears to turn upon whether the procedural mechanics employed by the trial court were in error.
Second, reversing on a procedural basis, rather than on the basis of the trial court's decision, is a waste of the parties' time and the taxpayers' money, in my opinion. I do not question the absence of the documents from the record. They are not here, although the Underwoods' response to request to produce before the trial court describes the stipulation in question as being attached. Their later motion for summary judgment recites that it is already in the file. Assuming they were correct, it would be wiser, in my view, to have the record supplemented here pursuant to Florida Rule of Appellate Procedure 9.200(f) than to treat appellees as Sisyphus because of a procedural issue raised here for the first time, and send them back down the mountain. It would be better, in my opinion, first to come to grips with the first issue; namely, whether it was correct to take judicial notice.
Third, I believe the trial court erred in taking judicial notice of the motion to dismiss and stipulation in the other case. The pleadings raised red flags that the pretrial posture of the previous case changed substantially at trial. Nothing that occurred at the hearing of February 15, 1985, was under oath; so whatever the trial court  and this court  had or has was in the pleadings herein. Paragraphs 6, 12, 13 and 14 of the Underwoods' complaint in the present case provide respectively:
6. That case of GERALD UNDERWOOD and DARLENE UNDERWOOD, his wife, v. Florida Power and Light was eventually settled prior to the second day of trial for the sum of $462,500.00. Florida Power and Light paid $162,500.00 in cash and assigned it's [sic] rights under the hold harmless and/or indemnity contract between Florida Power and Light and Robert J. Ackerman, Inc. to the Plaintiffs. This assignment is attached as Exhibit B.
12. Throughout the course of the original litigation surrounding this accident, the Defendant, NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG [sic], PENNSYLVANIA, defended the original Defendant, Florida Power and Light, until shortly before the actual trial began at which point NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG [sic], PENNSYLVANIA denied coverage to Florida Power and Light.
13. Subsequent to that denial of coverage by NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG [sic], PENNSYLVANIA, for which no reason was ever given to Florida Power and Light, Florida Power and Light, Florida Power and Light entered into the abovementioned *1330 settlement with the original Plaintiffs as referred to in Paragraph 6 of Count I.
14. Florida Power and Light was and is an insured under that policy of insurance issued by NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG [sic], PENNSYLVANIA to ROBERT J. ACKERMAN, INC. The Plaintiffs are not in the possession of a copy of that policy; however, a certificate of insurance is attached hereto as Exhibit C.
National Union's answer herein denied the Underwoods' allegations; and in its "complaint" for declaratory relief, filed with its above answer, alleged that the pertinent certificate of insurance does not name FP & L as an insured or as an additional insured.
The Underwoods' answer to that "complaint" raises the following affirmative defense:
The attorneys representing Nation [sic] Union Fire Insurance Company of Pittsburg [sic], Pennsylvania stipulated in the Pretrial Stipulation in the Case of Underwood v. Florida Power & Light that Florida Power & Light was a named insured of National Union Fire Insurance Company of Pittsburg [sic], Pennsylvania as reflected by the attached Pretrial Stipulation entered into by all counsel in that case.
National Union Fire Insurance Company of Pittsburg [sic], Pennsylvania is estopped from taking an inconsistent legal position to that that was taken by its attorneys in the previous action of Underwood v. Florida Power & Light.
The pretrial stipulation  if it was attached as represented  is not attached here.
Fourth, the real issue  as I can see from just what I have quoted herein  is whether this case was ripe for summary judgment. I did not think so at oral argument and do not think so now. In short, there are genuine issues of material fact as to coverage so far as I can see, which preclude summary judgment.
NOTES
[1] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).