538 So.2d 55 (1989)
Roland ROBERTS, Appellant,
v.
GATOR FREIGHTWAYS, INC., Appellee.
No. 87-170.
District Court of Appeal of Florida, First District.
January 20, 1989.
Rehearing Denied February 23, 1989.
David A. Snyder, Miami, for appellant.
Neal L. Ganon of Adams, Kelley & Kronenberg, Miami, and Earl M. Barker, Jr. of Slott & Barker, Jacksonville, for appellee.
*56 PER CURIAM.
Claimant appeals from an order denying his workers' compensation claim. He contends that the deputy commissioner erred in ruling that (1) no employer-employee relationship existed between claimant and the putative employer, Gator Freightways, Inc. (Gator), and that (2) Gator was not a statutory employer of claimant under the provisions of Section 440.10, Florida Statutes (1985). We affirm the first ruling but reverse the second.
In June 1986, the claimant was making a delivery to the Ace Rudd Company. Claimant was driving a tractor leased to Gator by Lucious Reason, the owner and operator, and pulling a trailer owned by Gator that was loaded with freight being transported for Gator's customer pursuant to Gator's bills of lading. While unloading the trailer at Ace Rudd Company, claimant fell out of the trailer, injuring himself on the pavement.
Claimant filed a claim seeking various workers' compensation benefits against Lucious Reason and Gator. Lucious Reason was subsequently dismissed as a result of a settlement. Subsequent to the final hearing, the deputy commissioner entered the appealed order denying the claim, finding that the claimant was neither an "employee" nor a "statutory employee" of Gator.
We agree that claimant was not an employee of Gator. The determination of whether an individual is an employee so as to be entitled to benefits under the Florida Workers' Compensation Act turns on the element of control. The control over claimant in this case was exercised by Lucious Reason, not Gator. The claimant was hired and trained by Reason, paid exclusively by Reason, had withholding deducted by Reason, worked hours set by Reason, had an oral agreement with Reason and no agreement with Gator, and had his performance monitored by Reason. Reason also supplied the tractor truck used by claimant, paid the maintenance and repairs of the vehicle, and assigned claimant his route.
Claimant maintains that Reason was an employee of Gator, and because Reason's employment contemplated the help of others, Reason's employees would also be employees of Gator within the definition in section 440.02(11), Florida Statutes (1987). However, competent substantial evidence establishes that Reason was not an employee of Gator but rather an independent contractor. The test for determining what constitutes independent service lies in the control exercised, the decisive question being who has the right to direct what shall be done, and when, where and how it shall be done. See Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858 (1941); Hilldrup Transfer & Storage of New Smyrna Beach, Inc. v. State, Department of Labor and Employment Security, Division of Employment, 447 So.2d 414 (Fla. 5th DCA 1984); and La Grande v. B & L Services, Inc., 432 So.2d 1364 (Fla. 1st DCA 1983).
The contract between Reason and Gator specifically recites that Reason is an independent contractor.[1] The contract provides in part that (1) neither Reason, as contractor, nor any of his drivers or employees shall be deemed to be employees of Gator; (2) if Reason hires employees for services under the contract, he is responsible for providing workers' compensation for his employees; and (3) Reason, as an independent contractor, is subject to the direction by the carrier merely as to the results to be accomplished and not as to the means and methods for accomplishing the results. Moreover, the actions of the parties in this case provide further evidence of *57 Reason's status as an independent contractor. It is apparent that Reason was in charge of his operation. Reason set his own schedule for work, did not earn paid sick leave or vacation, and did not have Gator deduct for income tax, social security or for any other purpose. Reason was responsible for (1) hiring his own employees to help him if necessary; (2) paying all compensation, taxes and workers' compensation for his employees; (3) establishing his employees' schedules; (4) assigning routes for his employees; (5) providing his own vehicles as well as those for any drivers he employs; and (6) paying for the maintenance and repairs on those vehicles.
Claimant's alleged status as an employee of Gator Freightways was essentially a disputed matter of fact for the deputy commissioner to decide. The deputy commissioner's decision that claimant was not an employee of Gator Freightways is supported by substantial competent evidence. We find no error in the deputy's ruling that claimant was an employee of Reason who, in turn, was an independent contractor vis-a-vis Gator.
We now turn to claimant's second point on appeal that Gator was his statutory employer pursuant to section 440.10(1), Florida Statutes (1987). That section provides in pertinent part:
(1) In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
To be regarded as a "contractor" under the statutory employer provisions of this section, it has been said that the company's primary obligation in performing a job or providing a service must arise out of a contract. National Union Fire Insurance Company v. Underwood, 502 So.2d 1325 (Fla. 4th DCA 1987); Southern Sanitation v. Debrosse, 463 So.2d 420 (Fla. 1st DCA 1985); and Florida Power and Light Company v. Brown, 274 So.2d 558 (Fla. 3d DCA 1973).
Appellant contends that the result in his case should be controlled by our decision in Barrow v. Shel Products, Inc., 466 So.2d 281 (Fla. 1st DCA 1985). In Barrow, the claimant was driving a tractor-trailer rig that had been leased to Shelton Trucking by Forrest Elder, the owner-operator of the tractor-trailer, who was also in the truck at the time. Elder and the claimant had delivered a load of dog food to a store in Miami and were apparently on their way to pick up another load (although not for Shelton Trucking) when the accident occurred. This court held that Shelton Trucking was a section 440.10 statutory employer of the driver-claimant.
Gator argues that Barrow is distinguishable because it involved a contract carrier, whereas Gator is a common motor carrier required to serve the general public by providing transportation or service upon reasonable request pursuant to 49 U.S.C. §§ 10922 and 11101 et. seq. and therefore is controlled by regulations of the federal Interstate Commerce Commission and the Department of Transportation. Thus, Gator argues, its business is distinctively different from that of contract motor carriers, which enter into a continuing contract with particular shippers and provide services and equipment to meet their special needs, citing American Trucking Associations, Inc. v. I.C.C., 659 F.2d 452 (5th Cir.1981). From this premise, Gator continues, its primary obligation to perform transport services arises not from contracts with its customers but from its statutory obligation as a common carrier to provide transportation and service to the general public pursuant to Chapter 49, United States Code.
Gator relies primarily upon Florida Power and Light Company v. Brown, 274 So.2d 558 (Fla. 3rd DCA 1973). In Brown, FP & L had entered into a contract with a shopping mall owner to supply electricity to the shopping mall's power lines. In *58 order to fulfill its contract, it was necessary for FP & L to contract with an electrical contractor to do some of the work necessary to install the FP & L equipment and make the electrical connections. In the course of this work, one of the subcontractor's employees suffered electrical burns and brought suit against FP & L. Notwithstanding the existence of a specific contract to provide electrical power, the court reasoned that FP & L's primary obligation arose, not from the contract with the mall owner, but rather from Section 366.03, Florida Statutes, which imposed a duty on public utilities to serve the general public, and accordingly held that FP & L was not a "contractor" within the meaning of Section 440.10. Gator also relies on National Union Fire Insurance Company v. Underwood, 502 So.2d 1325 (Fla. 4th DCA 1987), in which the court followed the Brown case and Williams v. Pan American World Airways, Inc., 448 So.2d 68 (Fla. 3d DCA 1984). In the latter case, Pan American World Airways was held not to be a "contractor" under section 440.10 because its "`primary obligation' in transporting their luggage arises not out of its countless individual contracts, that is, the tickets, with its passengers, but from generalized statutory and common law requirements that it do so. [citations omitted]" Id. at 69.
We are unable to discern the logic and factual basis for creating a distinction between "common carriers" and "contract carriers" as the sole legal basis for exempting Gator Freightways from the status of a statutory contractor under section 440.10, as construed in Barrow v. Shel Products, Inc. Neither claimant nor his employer Reason was engaged in the business of a common carrier; Gator Freightways held that license, and the license merely required Gator to offer its transportation services to the public generally. That license did not displace the contract of carriage necessarily created between Gator and its customers whenever Gator accepted goods for transport. The law is well established that
where property is delivered to and accepted by a carrier for transportation without an express contract, the law implies a contract that it shall be carried to and delivered at the place of destination in accordance with and subject to the terms and conditions fixed by law.

Ordinarily, the contract is embodied in the shipping receipt or bill of lading, but this does not constitute the entire contract; rather, such receipt or bill and the operative tariffs and schedules constitute the entire contract of carriage. Nor does the issuance of a bill of lading necessarily supersede or nullify a prior contract, oral or written, which is complete in itself, unless it was the intention of the parties to treat the prior contract as merged into the later written agreement.
A common carrier may contract with shippers for a single transportation or for successive transportations, subject to a change of rates in the manner provided by law. Also, a common carrier who undertakes for himself to perform an entire service may employ a subordinate agency, although he cannot constitute another person or corporation the agent of the consignor or consignee.
13 Am.Jur.2d Carriers § 226 (1964) (emphasis added). Furthermore,
A carrier is under an obligation imposed by law to accept and carry goods offered for transportation when a proper tender thereof is made. Where, however, the carrier has accepted goods for carriage, or has agreed to furnish cars or loading space or to perform any other specific item of service, a contractual relationship arises, the obligations of which are reciprocal, and either party may sue in the event of a breach.
13 Am.Jur.2d Carriers § 231 (1964). Thus, notwithstanding the carrier's obligation to carry goods offered by the general public for transport, each such undertaking must be performed in accordance with the contract made between the parties, whether that contract covers a specific trip or is continuing in nature so as to cover successive trips.
*59 In this case, the critical error in Gator's argument lies in the assumption that Gator's primary obligation to perform services arises not from contracts but from its statutory obligation as a common carrier to provide transportation and service to the general public pursuant to Chapter 49, United States Code. No doubt Gator must comply with the applicable federal law; but it is also quite clear that in offering its services under that law, Gator nevertheless must enter into contracts of carriage in every instance of transporting a customer's goods. It is that contract of carriage that controls the specifics of the undertaking and the relationship between the parties and serves as the basis for a damage suit in the event of breach by either party. That contract may also impose special, customized obligations on the carrier, so long as they are not in violation of applicable statutes. Thus, it is simply not correct to characterize Gator's relationship with its customers as being governed solely or primarily by statute.[2]
Gator's reliance on Florida Power and Light Co. v. Brown, 274 So.2d 558 (Fla. 3d DCA 1973), is misplaced. The Brown decision, if not incorrectly decided, is materially distinguishable from this case. Different law governs the relationships of a power company exercising an exclusive franchise for supplying electric power to the public and a trucking company operating as a common carrier. In the Brown case, the court found that there was no contract between FP & L and its customer, Pompano Fashion Square, and that FP & L's duties were predicated entirely upon statutes.[3] A trucking company's duties to its customers, as we have seen above, are primarily based on contract law; for a trucking company, whether a common carrier or a contract carrier, enters into a contract specifying the terms of its undertaking with each of its customers, and such contract can be customized to meet the specific needs of the customer.
The court in Brown appears to have followed without question this court's opinion in State ex rel. Auchter Co. v. Luckie, 145 So.2d 239 (Fla. 1st DCA), cert. denied, 148 So.2d 278 (Fla. 1962), which limited the application of section 440.10 to building construction contracts. In Luckie the court construed West v. Sampson, 142 So.2d 74 (Fla. 1962), as indicating, although not specifically holding, that
the type of contractual obligation by which one must be bound in order to be held a contractor within the meaning of the statute is the conventional type of contract entered into between a general contractor and an owner of property... .
145 So.2d at 242. Judge Rawls's dissent in Luckie cogently points out that the court misinterpreted the supreme court's opinion in West v. Sampson, 145 So.2d at 243-46. But more importantly, this and other Florida appellate courts have declined to limit the application of section 440.10 to construction contracts for improvements to real property despite the Luckie opinion. For example, this court, applying section 440.10, held that a trucking company that had leased a truck was the statutory employer of the driver of the truck. Barrow v. Shel Products, Inc., 466 So.2d 281 (Fla. 1st DCA 1985). See also Hart v. National Airlines, Inc., 217 So.2d 900 (Fla. 3d DCA), cert. denied, 225 So.2d 533 (Fla. 1969) (common carrier may be a statutory contractor where the record shows that the carrier is under a contract with a third person to transport goods for that third person); Southern Sanitation v. DeBrosse, 463 So.2d 420 (Fla. 1st DCA 1985) (garbage disposal company held to be a statutory employer *60 of an employee of company hired to haul cover dirt to its sanitary landfill).
The purpose of section 440.10 is to insure that a particular industry will be financially responsible for injuries to those employees working in it, even though the prime contractor employs an independent contractor to perform part or all of its contractual undertaking. To construe section 440.10 as argued by Gator would afford many common carriers a convenient loophole through which to avoid the requirement of workers' compensation coverage on many drivers delivering loads pursuant to the carrier's contracts with its customers. The carriers could simply delegate responsibility for workers' compensation coverage to small "independent contractors" who routinely do not comply with the carrier's contractual stipulation to provide such coverage because they do not employ three or more employees,[4] as in this case. We conclude that section 440.10 must be read in pari materia with the entire workers' compensation act. Doing so will not permit the narrow but "highly-buffed judicial gloss" that the courts have placed on this statute, as described by Judge Schwartz in Williams v. Pan American World Airways, Inc., 448 So.2d 68, 70 (Fla. 3d DCA 1984). This gloss has completely thwarted the obvious legislative intent to insure that a person performing a contractor's work, even as an employee of a subcontractor, shall be entitled to workers' compensation protection with the primary employer if the subcontractor fails to provide such coverage.
In this case, Reason and claimant were employed to transport specific loads for customers of Gator Freightways. Under the legal principles discussed above, a contract of carriage between Gator and each of its customers was an essential predicate to transporting each such load. Claimant and his employer, Reason, were simply performing Gator's contractual duties at the time claimant was injured. Thus, irrespective of whether claimant was transporting goods for Gator covered by the bill of lading pursuant to an oral or written contract of hire or merely a contract implied by law, Gator should be treated legally as a statutory contractor under section 440.10. Such a construction of section 440.10 comports with our decision in Barrow v. Shel Products, Inc., 466 So.2d 281 (Fla. 1st DCA 1985), which controls this case.
In summary, the deputy commissioner's order is predicated on the assumption that Gator's relationship with its customers is based primarily on statutory law to the exclusion of the contractual undertaking that the law requires in every case of carriage of goods. As a matter of law, therefore, the deputy commissioner erred in ruling that Gator was not a statutory employer because Gator was a common carrier.
The appealed order is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
WENTWORTH and ZEHMER, JJ., concur.
NIMMONS, J., concurs and dissents with written opinion.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur with the portion of the majority opinion affirming the deputy commissioner's ruling that no employer-employee relationship existed between claimant and Gator. However, I do not agree to the reversal of the deputy's finding that Gator was not a statutory employer of claimant under Section 440.10, Florida Statutes.
I would therefore affirm the appealed order en toto.
NOTES
[1] As we observed in La Grande, supra:

Certainly, we recognize that the legal relationship of these parties does not depend upon what they say it was. See Justice v. Belford Trucking Company, Inc., 272 So.2d 131, 134 (Fla. 1973); Cantor v. Cochran, 184 So.2d 173 (Fla. 1966). However, the contract provisions pertaining thereto should not be completely ignored. Although of lesser significance than other factors, such provisions do indicate a refusal by the worker to submit to pervasive control by the company and a recognition by the company of the absence of a master's control over the worker. See, Restatement of Agency 2d, § 200, Comment (m) at page 492; Local 777, Democratic Union Organizing Committee v. N.L.R.B., 603 F.2d 862 (1978).
432 So.2d at 1367.
[2] Examples of Gator's obligations to its customers that must be governed by the applicable contract of carriage rather than by statute are: the date, time and location of shipment and/or delivery; the nature and quantity of the goods to be transported; insurance coverage; and the charge for Gator's services, whether set in whole or in part by tariffs or by the parties' negotiation.
[3] The court did say, "The primary obligation of F.P.L., as a public utility, to provide power to its customers in the case before us did not arise out of a contract between the Fashion Square and F.P.L., even assuming such a contract existed." 274 So.2d at 560 (emphasis added). However, the court disclaimed making such assumption in deciding the case. 274 So.2d at 560, n. 3.
[4] Section 440.02(13)(b)(2) defines employment as including "all private employments in which three or more employees are employed by the same employer."