996 So.2d 913 (2008)
Alfredo AMORIN and Jose Amorin, Appellants,
v.
Blendona GORDON, as Personal Representative of the Estate of Novelle Gordon, deceased, individually and as natural and legal guardian of Novella Gordon, Darlyn Gordon and Shalley Gordon, her minor children, Rafael A. Delgado, and C & A Trucking, Inc., a Florida corporation, Appellees.
No. 4D08-1376.
District Court of Appeal of Florida, Fourth District.
December 3, 2008.
Rehearing Denied January 14, 2009.
*914 Hinda Klein of Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A., Hollywood, for appellants.
O. John Alpizar of Alpizar Law LLC, Palm Bay, and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellees.
POLEN, J.
Appellants Alfredo Amorin ("Alfredo") and his brother Jose Amorin ("Jose") appeal a partial summary judgment denying them workers' compensation immunity pursuant to Florida Statute section 440.10(1)(e) and granting Appellee Gordon's cross motion for summary judgment. This court has jurisdiction. Fla. R.App. P. 9.130(a)(3)(C)(v) (2008).
The underlying lawsuit involves a motor vehicle accident between Alfredo and Novelle Gordon ("Novelle"), whose estate is represented by Blendona Gordon ("Gordon"). The facts regarding the accident are undisputed. Both Alfredo and Novelle were working on State Road 60 in Vero Beach, as the road was being widened from a two- to a four-lane road. Alfredo, who was driving a dump truck at the time of the accident, swerved into oncoming traffic when another truck stopped suddenly in front of him. Novelle was approaching from the opposite direction and in an effort to avoid hitting Alfredo, swerved his dump truck onto the shoulder of the road. Unfortunately, the two trucks collided, and Novelle was killed.
Alfredo and Novelle worked not only on the same construction project, but for the same general contractor. Alfredo was employed by Jose, who was a sub-subcontractor for C & A Trucking. Novelle worked for Harrack Trucking & Land Clearing, a sub-subcontractor for East Coast Earth Movers. Both C & A and East Coast were subcontractors for Elmo Greer & Sons, the general contractor in this case.
As part of its contract with the Florida Department of Transportation, Elmo Greer maintained workers' compensation coverage through New Hampshire Insurance Company. Gordon argues that this policy covered only Elmo Greer, not C & A and not Jose. For support, Gordon points to the policy contract, which states "[y]ou are insured if you are an employer named in Item 1 of the Information Page." Item 1 of the policy contract indeed lists only Elmo Greer as the named insured.
The subcontract between Elmo Greer and C & A required C & A to provide workers' compensation to its employees. Likewise, C & A's sub-subcontract with Jose required Jose to obtain workers' compensation. Notwithstanding this, neither C & A nor Jose obtained such coverage. The only policy that would have covered the Amorins is that of Elmo Greer.
Novelle's survivors, on the other hand, actually received workers' compensation benefits. Although he was retained by Harrack to work on State Road 60, Novelle was a leased employee from Central Leasing, a service personnel management company. Accordingly, Central Leasing had the obligation to pay for Novelle's salary as well as workers' compensation insurance. Funeral expenses and workers' compensation death benefits were paid to Novelle's estate by Zurich American Insurance Company.
*915 The underlying suit commenced when Gordon sued the Amorins for negligence. As an affirmative defense, the Amorins raised workers' compensation immunity under chapter 440 of the Florida Statutes. Thereafter, both sides filed a motion for summary judgment on the issue whether the Amorins were entitled to workers' compensation immunity. The trial court held a hearing on this issue.
At the hearing, the Amorins argued for horizontal immunity  that as long as the contractor, Elmo Greer, has the statutory obligation either to obtain workers' compensation or to ensure that its subcontractors do the same, all of Elmo Greer's subcontractors, sub-subcontractors, and their employees are immune from tort liability as to a claim by an employee injured on that job. The Amorins furthered that Elmo Greer's workers' compensation policy did, in fact, cover the sub and sub-subcontractors as well as their employees involved in this suit.
Gordon countered that a condition precedent to the horizontal immunity was not satisfied in this case. For the Amorins to assert the immunity, Gordon argued, workers' compensation coverage must have been provided by the contractor, the subcontractor, or the sub-subcontractor. Neither Elmo Greer, C & A, nor Jose provided such coverage for the Amorins. Gordon also argued that the newly enacted statute  § 440.10(1)(e), Fla. Stat. (2004)  was unconstitutional because it deprived injured workers of their common law right to sue other subcontractors and their employees in tort.
Having considered these arguments, the court found for Gordon and declined to consider the constitutionality of the statute. We now reverse that decision and reject Gordon's constitutional challenge.
The standard of review for an order granting summary judgment is de novo. Volusia County v. Ormond Beach, LP, 760 So.2d 126, 130 (Fla.2000).

I. Worker's Compensation Immunity
The section of the Florida Statute in contention provides:
A subcontractor providing services in conjunction with a contractor on the same project or contract work is not liable for the payment of compensation to the employees of another subcontractor or the contractor on such contract work and is protected by the exclusiveness-of-liability provisions of s. 440.11 from any action at law or in admiralty on account of injury to an employee of another subcontractor, or of the contractor, provided that: (1) the subcontractor has secured workers' compensation insurance for its employees or the contractor has secured such insurance on behalf of the subcontractor and its employees in accordance with paragraph (b); and (2) the subcontractor's own gross negligence was not the major contributing cause of the injury.
§ 440.10(1)(e), Fla. Stat. (2004). Subsection (1)(b), referenced above, states:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
§ 440.10(1)(b), Fla. Stat. (2004).
Taking the two subsections together, the Amorins argue that horizontal immunity means as long as the contractor has the *916 liability to cover all subcontractors who do not have their own coverage, those subcontractors and their employees are immune from suit. In this case, horizontal immunity attaches because Elmo Greer was legally obligated to provide workers' compensation benefits to all of its sub and subsubcontractors.
Gordon, on the other hand, reads the statute to require "a condition precedent" in order for horizontal immunity to protect the Amorins. Either Jose, C & A, or Elmo Greer had to actually obtain workers compensation on behalf of Jose and his employees.
Since its recent enactment in 2004, no case law has interpreted the horizontal immunity statute. Vertical immunity, in contrast, is a well-settled doctrine, requiring contractors to be liable for and to secure workers' compensation for their employees in exchange for the "exclusiveness of liability." See §§ 440.10(1)(a) & 440.11, Fla. Stat. (2004). The two doctrines are considered here, in pari materia.
As interpreted in the context of vertical immunity, "[s]ection 440.10 establishes the concept of `statutory employer' for contractors who sublet part of their work to others." Motchkavitz v. L.C. Boggs Indus., Inc., 407 So.2d 910, 912 (Fla.1981). This means "where a subcontractor performing part of the work of a contractor fails to secure payment of compensation, the contractor is liable for the same. If both subcontractor and contractor fail to secure coverage, then the contractor has an employer's liability to the subcontractor's injured employee." Id.
"The obvious legislative intent [behind section 440.10 is] to insure that a person performing a contractor's work, even as an employee of a subcontractor, shall be entitled to workers' compensation protection with the primary employer if the subcontractor fails to provide such coverage." Roberts v. Gator Freightways, Inc., 538 So.2d 55, 60 (Fla. 1st DCA 1989). Thus, this court has ruled that a contractor entering into a contractual obligation to a third party and subcontracting a portion of that work to a subcontractor is deemed to be the employer of its subcontractor's employees and is responsible for securing coverage for the subcontractor's employees. Broward County v. Rodrigues, 686 So.2d 774, 775 (Fla. 4th DCA 1997).
Here, Elmo Greer was the statutory employer of the Amorins. And because C & A and Jose both failed to obtain workers' compensation, Elmo Greer was responsible for providing such coverage to the Amorins. The policy that Elmo Greer maintained through New Hampshire Insurance allowed for just that. That policy, in pertinent part, states:
This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. All your officers and employees engaged in work covered by this policy; and
2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as a premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.
(Emphasis added.) We construe subsection 2 above to refer to employees of sub and sub-subcontractors, who did not obtain their own workers' compensation policy.
Having determined that the Amorins were covered by Elmo Greer's policy, we find the first condition in the horizontal *917 immunity statute satisfied. Because Gordon does not assert that the major contributing cause of the accident was Alfredo's gross negligence, the Amorins are entitled to horizontal immunity. We, thus, reverse the trial court's partial summary judgment for Gordon.

II. Constitutionality of Section 440.10(1)(e), Florida Statutes (2004)
Gordon argues additionally that section 440.10(1)(e) is unconstitutional, that horizontal immunity deprives injured persons at construction sites of their common law right to sue unrelated entities without providing some alternative remedy as a quid pro quo.
In relying on a line of cases decided prior to the 2004 amendment to section 440.10, Gordon emphasizes what is enumerated in section 440.015 as the legislative intent behind the workers' compensation system: "The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike." § 440.015, Fla. Stat. (2003). "Essentially, under this no-fault system, the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits." Turner v. PCR, Inc., 754 So.2d 683, 686 (Fla.2000) (relying on United Parcel Serv. v. Welsh, 659 So.2d 1234, 1235 (Fla. 5th DCA 1995)). Taking this doctrine further, the Florida Supreme Court decided,
The duty to provide workers' compensation benefits supplants tort liability to those injured on the job. Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954). If the duty to provide such coverage does not exist, then one has no reason to expect immunity from wrongdoings committed against a third party. The dissent of Chief Justice Sundberg in Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910 (Fla.1981), is now correct, and we recede from Younger and Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840 (Fla.1950), thus allowing a third-party action against one who has no duty to afford compensation benefits.
Employers Ins. of Wausau v. Abernathy, 442 So.2d 953, 954 (Fla.1983).
In this case, Gordon contends that because the Amorins had no liability to Novelle's employer for the payment of compensation, they should not enjoy immunity as to a claim brought by Novelle's estate. By providing for such immunity, Gordon asserts, the legislature has taken away their common law right to sue the Amorins in tort.
The hallmark decision in Kluger v. White guides that
where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. s. 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
281 So.2d 1, 4 (Fla. 1973). This decision has been narrowly construed to mean that "[t]he Constitution does not require a substitute remedy unless legislative action has abolished or totally eliminated a previously recognized cause of action. As discussed in Kluger and borne out in later decisions, no substitute remedy need be supplied by legislation which reduces but does not destroy *918 a cause of action." Jetton v. Jacksonville Electric Auth., 399 So.2d 396, 398 (Fla. 1st DCA 1981).
Here, Gordon asserts that the common law right of Novelle and his estate to sue unrelated subcontractors for injuries caused by their negligence has been completely abolished by the 2004 amendment to section 440.10. We reject this argument, however, as Gordon fails to recognize the conditional nature of horizontal immunity. In adopting subsection (1)(e), the legislature provided that unless "the subcontractor has secured workers' compensation insurance for its employees or the contractor has secured such insurance... and the subcontractor's own gross negligence was not the major contributing cause of the injury," one subcontractor cannot be shielded from tort liability to another subcontractor. § 440.10(1)(e), Fla. Stat. (2004). Had Gordon been able to show, for instance, that the accident occurred as a result of Alfredo's gross negligence, Gordon could have sued the Amorins in tort. In other words, Gordon's common law right to sue unrelated subcontractors for injuries caused by their negligence has not been completely abolished.
Florida's worker's compensation system was established for two reasons: "(1) to see that workers in fact were rewarded for their industry by not being deprived of reasonably adequate and certain payment for workplace accidents; and (2) to replace an unwieldy tort system that made it virtually impossible for businesses to predict or insure for the cost of industrial accidents." De Ayala v. Fla. Farm Bureau Cas. Ins. Co., 543 So.2d 204, 206 (Fla.1989). Further,
[l]itigation expenses, including those borne by the claimant are reduced by the administrative handling of claims. Litigation delays are also reduced. The cost of inevitable injury is spread throughout the industry. The employee is further benefited by not having any recoverable damages reduced by the proportionate fault of the employee. Certainty and efficiency are given in exchange for potential recovery. This satisfies the requirements of Article I, Section 21, Florida Constitution.
Acton v. Ft. Lauderdale Hosp., 418 So.2d 1099, 1101 (Fla. 1st DCA 1982). Given these benefits of the workers' compensation system, the legislature's effort to establish horizontal immunity in limited circumstances cannot be deemed unconstitutional. It is one thing to abolish a remedy and leave a claimant with no alternative, but another to simply increase the class of fellow employees who are immune from suit where there is workers' compensation coverage for the injured worker. Gordon has cited no authority for holding this type of expansion of immunity invalid. Novelle's survivors have been beneficiaries of workers' compensation in this case, and their common law right to seek tort remedies from the Amorins was not completely abolished by the horizontal immunity statute. As such, Gordon's challenge of section 440.10(1)(e) on constitutional grounds is denied.
We reverse the partial summary judgment for Gordon and direct the trial court to enter summary judgment for the Amorins.
KLEIN and STEVENSON, JJ., concur.