PER CURIAM.
Appellants City of Orlando and Alexis appeal the order of the Judge of Compensation Claims (JCC) finding the City the statutory employer of claimant Beresford Brown, thereby establishing claimant’s entitlement to workers’ compensation benefits. We reverse and remand.
Claimant, Beresford Brown, is a carpenter who was injured on May 19, 1988, while performing renovation work on a home owned by Catherine Flowers, a resident of the City of Orlando. The funds for the renovation of Ms. Flowers’ home were provided by the federal government through a program administered by the City of Orlando’s Bureau of Housing and Economic Development (BHED). In general terms, the City solicited residents to qualify for the funds and established qualification guidelines. If a resident qualified, the City would send out an *1103 inspector to determine what repairs were needed to bring the home into compliance with the applicable building code. The City would then solicit contractors to perform the work. Ninety-nine percent of the contractors utilized on such projects were on a list approved by the City.
Ms. Flowers’ application for federal assistance was approved. She testified that she had no choice in the selection of the contractor which was provided by the City. Ms. Flowers entered into promissory note and mortgage agreements with the City providing that the City would pay for the repairs to Ms. Flowers’ home with repayment deferred for the period of five years. If, however, the homeowner lived in the home for five years, the mortgage and note would be forgiven. By her signature, Ms. Flowers entered into a contract for the needed repairs with contractor Robert Wilcox of Rainbow Construction, the contractor selected by the City. Mr. Wilcox had previously filed an application for consideration as an approved contractor for the BHED rehabilitation projects. By signing the application, Mr. Wilcox agreed to use only contract forms approved by the City and agreed that the work would be performed in accordance with rehabilitation standards and subject to inspection by the City. Wilcox further agreed to provide adequate workers’ compensation insurance. The application also lists claimant Beresford Brown as a subcontractor available for use on the projects.[1]
Mr. Charles Bargaineer was employed by the BHED as a rehabilitation specialist. Bargaineer went to Flowers’ house and drew up the initial specifications describing the needed repairs. As the work progressed, Bargaineer would go out about three or four times a week to inspect the work. Bargai-neer stated that it was his responsibility to make sure the work performed complied with the building code. If the work did not conform to the specifications, Bargaineer would contact the contractor or, if necessary, his supervisor. When a job was successfully completed, Bargaineer would sign a certificate to that effect. Ms. Flowers testified that another inspector assumed Bargaineer’s role at a subsequent point in the project. Ms. Flowers testified that the subsequent inspector discovered some problems with the work, and that the City ultimately relieved Mr. Wilcox of his duties under the contract. Flowers stated that the City appointed another contractor to finish the job.
Claimant, who was 71 years old at the time of the hearing in 1992, testified that he stepped on a nail which pierced his boot while working at Ms. Flowers’ home on May 19, 1988. A couple of days later his foot got quite swollen and claimant sought and received medical treatment. Ultimately, however, the injury necessitated amputation of claimant’s leg below the knee. Although Wilcox agreed to carry workers’ compensation insurance, it is undisputed that he failed to carry such insurance.
The JCC issued an order finding the City of Orlando responsible for workers’ compensation benefits on the ground that the City was claimant’s statutory employer. The JCC’s order found that the City assumed the role of general contractor for the project and emphasized that the City maintained complete control over the project at all times, specifying the work to be performed, inspecting the work, hiring the contractor and even firing Robert Wilcox, to whom the JCC referred as a subcontractor. Even on the facts as found by the JCC, we find as a matter of law that the City did not assume the role of a general contractor.
The concept of statutory employer, for worker’s compensation purposes, is that a contractor who sublets all or any part of its contract work is the employer not only of its own employees but also of the employees of any subcontractor to whom all or any part of the principal contract has been sublet. § 440.10(1), Fla.Stat. (1991). It is absolutely basic, therefore, that one cannot be a “contractor” (and thus a statutory employer) within the meaning of this statute unless the “contractor” has a contractual obligation, a portion of which is sublet to another. Jones v. Florida Power Corp., 72 So.2d 285 (Fla.1954).
Woods v. Carpet Restorations, Inc., 611 So.2d 1303, 1304 (Fla. 4th DCA 1992). In the present case, we decline claimant’s invita *1104 tion to consider the City a general contractor under an express agreement with the federal government to oversee the renovation of Ms. Flowers’ home. It is clear from the record before us that the City had no obligation to actually perform the repairs. At most, the City assumed merely the obligation to pay for the repairs. Indeed, on the record before us, we decline to characterize the relationship between the City and the federal government as contractual in nature.
We also find no merit in claimant’s contention that an implied contract existed between Ms. Flowers and the City, such implied contract demonstrating the City’s assumption of the role of general contractor. In our view, the most that can be said of the role of the City in this project is that the City was “standing in the shoes” of the homeowner or the hiring party, engaging the services of a general contractor, Robert Wilcox, for the performance of specified building renovations. In the first instance, the City clearly had no obligation to actually perform the needed repairs. Hence, the City could not have sublet a portion of an obligation to perform home repairs. Second, the examples of “control” cited by the JCC as evidence of the City’s role as general contractor are fully consistent with the role of a homeowner or other hiring party who engages the services of a general contractor to perform the contemplated repairs. Clearly, the homeowner or hiring party has the right to hire a general contractor, specify the work to be performed, inspect the work to assure its satisfactory completion and to fire the general contractor for failure of performance. See Van Ness v. Independent Construction Co., 392 So.2d 1017, 1019 (Fla. 5th DCA 1981). The fact that Ms. Flowers did not perform these functions for herself did not elevate the City to the position of general contractor.
We reverse and remand to the JCC for entry of an order consistent with this opinion.
REVERSED and REMANDED.
BOOTH, MINER and WOLF, JJ., concur.

. The JCC's order finds claimant to have been an employee of Robert Wilcox. Claimant’s status as an employee or independent contractor, however, is not material to our analysis.