642 So.2d 661 (1994)
Bertha ANTINARELLI, Appellant,
v.
OCEAN SUITE HOTEL and Nation Wide Insurance Company, Appellees.
No. 93-1483.
District Court of Appeal of Florida, First District.
September 16, 1994.
Dennis D. Smejkal, Parrish & Smejka, P.A., Orlando, Bill McCabe, Shepherd, McCabe & Cooley, Longwood, for appellant.
*662 Don W. Allen, Herbert A. Langston and Gerald F. Znosko, Langston, Hess & Bolton, P.A., Maitland, for appellees.
MICKLE, Judge.
Bertha Antinarelli (Claimant) appeals an order of the judge of compensation claims (JCC) denying and dismissing with prejudice her claim for benefits. Specifically, the JCC found that Four K's of Brevard, Inc., d/b/a Ocean Suite Hotel (Hotel), was neither a direct employer nor a statutory employer of Claimant. The record supports the finding of no actual direct employer-employee relationship between Hotel and Claimant. However, we are unable to conclude that competent substantial evidence supports the finding of no statutory employment relationship. In fact, the record clearly demonstrates that Hotel assumed and then delegated certain primary contractual obligations so as to establish itself as Claimant's statutory employer for purposes of section 440.10(1)(b), Florida Statutes (1991). We reverse the JCC's order and remand for further proceedings consistent with the holding herein.
The pertinent language in the statute sets forth the circumstances in which a business or establishment will be deemed the statutory employer liable for payment of compensation to eligible claimants:
(b) In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Claimant testified that in September or October 1991, she was hired by restaurant manager Charles T. Moon to work as a breakfast waitress, cashier, and cook at Juniper's Restaurant. While at work in the restaurant on May 8, 1992, Claimant slipped on a piece of endive in the cooler, hit the shelves, and injured her right knee. Under the express terms of two letters of agreement, dated March 9, 1990, and October 22, 1991, and signed by a Mr. Krukonis (as President of Four K's of Brevard, Inc.) and Moon (as Operator of Juniper's Restaurant), the restaurant operator agreed to be "responsible for providing Workmen's Compensation Insurance coverage for all personnel working in Juniper's regardless of their familial status." A "reasonable period of time" to obtain such coverage was deemed acceptable under the agreement. In fact, however, the restaurant did not have any workers' compensation coverage on the date of Claimant's industrial accident. Under those circumstances, a question arose as to whether or not Claimant could demonstrate a statutory employment relationship with Hotel pursuant to section 440.10(1)(b).
Hotel's former general manager, Tom Kendrick, testified that during the period at issue the Krukonis family, as owners of The Pelican Trust (Trust), owned Hotel's physical plant. The Krukonis family also owned Four K's of Brevard, Inc., d/b/a Hotel, which was formed to operate Hotel and then leased the hotel property from owner Trust. The JCC found that "Hotel's sole relationship with the owner was that of tenant pursuant to a lease agreement." The facts accord with this finding, but the issue on appeal requires further analysis.
As seems evident from the language in subsection (1)(b), "a statutory employment relationship may be found to exist even where no actual employment is found." Orama v. Dunmire, 552 So.2d 924, 925 (Fla. 1st DCA 1989). To prove a statutory employment relationship, Claimant had to establish that a "contractor" had sublet a part or parts of its contract work to one or more "subcontractors." Claimant alleged that Hotel was such a contractor, i.e., "one under a contractual obligation to perform some work for another." Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910, 914 (Fla. 1981). Stated another way, the rule is that the entity alleged to be the contractor must have "incurred a contractual obligation to a third party, a part of which obligation the entity has delegated or sublet to a subcontractor whose employee is injured." Miami Herald Publishing v. Hatch, 617 So.2d 380, 381 (Fla. 1st DCA 1993); Woods v. Carpet Restorations, *663 Inc., 611 So.2d 1303 (Fla. 4th DCA 1992). For an entity such as Hotel to be regarded as a contractor, its "primary obligation in performing a job or providing a service must arise out of a contract." Roberts v. Gator Freightways, Inc., 538 So.2d 55, 57 (Fla. 1st DCA), affirmed, 550 So.2d 1117 (Fla. 1989); Acme Oil v. Vasatka, 465 So.2d 1314, 1317 (Fla. 1st DCA 1985); Southern Sanitation v. Debrosse, 463 So.2d 420, 422 (Fla. 1st DCA 1985).
In Hatch, we affirmed the JCC's order finding that a newspaper publishing company (Miami Herald Publishing) was the statutory employer of the two married claimants, pedestrian "street hawkers" who were injured while selling newspapers. Significantly, the publishing company and the claimants in Hatch stipulated that 1) the newspaper had obligated itself contractually to perform certain services for its paying advertisers, 2) the newspaper's operating revenue derived primarily from the sale of advertising space in the newspaper, 3) the newspaper's total dissemination and penetration within the market was a significant inducement for advertisers to do business with the newspaper, 4) delivery of newspapers was essential to the marketing and sale of advertising, and 5) the newspaper agreed with its advertisers to use its best efforts to maintain the largest circulation possible. 617 So.2d at 381-82. The JCC found that a part of the newspaper's contractual obligation to certain third parties (its retail, classified, and national advertisers) was passed along, or subcontracted, by the newspaper to its general distributor agents and to their (street-corner sellers such as the claimants. Thus, material differences in the nature of the dispositive contract render Hatch factually distinguishable from our decision in Keith v. News & Sun Sentinel, 631 So.2d 333, 334 (Fla. 1st DCA 1994), where the JCC found that recitals in the threshold contract between the publisher and its delivery agent insulated the publisher and its insurer from liability for the injuries of a newspaper vendor.
Former manager Kendrick testified that as part of the marketing strategy for its "corporate" and "get-away" packages, Hotel included in the room rate a voucher entitling certain guests to a "complimentary breakfast" at Juniper's Restaurant. Those guests could redeem the coupons at Juniper's, which was the only restaurant on the premises. Claimant testified that she had served breakfast to "a lot of corporate people," most of whom were staying at Hotel and redeeming their breakfast vouchers. Kendrick stated that corporate and get-away clients constituted a large part of Hotel's business.
Claimant essentially contends that in marketing its plans and specifically setting its corporate and get-away package rates in contemplation of guaranteeing a free breakfast, Hotel incurred a "primary obligation" to provide a service to certain of its guests. The agreements in Hatch, whereunder the publishing company incurred an obligation to certain third parties to publish their paid advertisements, are analogous to the marketing arrangement in the instant case, whereby Hotel guaranteed a complimentary breakfast to purchasers of certain room packages at a predetermined rate. The record indicates that Hotel calculated the free breakfast in determining the room rates, and Kendrick acknowledged that Hotel had an obligation to provide a breakfast by agreement with certain guests. He agreed that the right to a free breakfast accrued to those guests, just as they were afforded the right to stay in the room upon assuming responsibility for payment of lodging. Furthermore, Kendrick admitted that Moon and Juniper's Restaurant performed the breakfast part of the contract. Whether or not a formal written contract existed between Hotel and those guests is immaterial under the statute. Barrow v. Shel Products, Inc., 466 So.2d 281, 282 (Fla. 1st DCA 1985). The competent substantial evidence in the record leads us to only one conclusion: in setting particular package rates, Hotel assumed a primary, basic, and essential obligation to designated guests to provide a complimentary breakfast along with lodging. Therefore, Hotel met the statutory and decisional criteria to be a contractor. The JCC's characterization of the relationship between Hotel and the cooperating restaurants as "a mutually beneficial business arrangement" does not mandate a different result.
*664 Inasmuch as the record establishes that Hotel had no other restaurant of its own, and that Juniper's Restaurant was the only establishment on the premises to which eligible guests were directed to redeem their breakfast tickets, Hotel necessarily delegated, passed on, or "sublet" its meal duties to the restaurant. Jones v. Florida Power Corp., 72 So.2d 285, 289 (Fla. 1954); Southern Sanitation, 463 So.2d at 422 (company that was contractually obligated to dispose of municipal garbage subcontracted or passed on hauling business its "essential obligation" to haul landfill cover dirt, thereby becoming statutory employer of hauler's truckdriver). Appellees correctly note the obvious point that eligible guests could elect not to redeem their breakfast vouchers, but that fact in no way diminishes the consequences of Hotel's initial decision to offer the free meal in setting a package rate. Hotel designated several other fall-back restaurants where guests could obtain a complimentary breakfast, but that was an option only when Juniper's Restaurant was unavailable to serve the meal. If Juniper's Restaurant was closed, then Hotel gave the eligible guests a monetary refund or arranged for breakfast elsewhere. We interpret Motchkavitz as providing that the participation of other restaurants in the meal coupon plan would not, of itself, eliminate Juniper's Restaurant as a potential subcontractor. 407 So.2d at 912 (statute contemplates situations where "any part or parts" of contractor's work are sublet to one or more subcontractors).
The significant extent to which Hotel designated Juniper's Restaurant to carry out its breakfast obligation, and the restaurant agreed to comply, is evident in their two letters of agreement, the express purpose of which was
to clarify the terms of agreement between the Ocean Suite Hotel and Charles Terry Moon pertaining to the operation of Juniper's Restaurant for the purpose of serving the breakfast meal to the Guest [sic] of the Hotel and any other outside patrons. Any violation of the terms of this agreement shall be cause of immediate termination of the lease between the above mentioned parties.
The agreement further set out the specific hours of the restaurant's breakfast operations, required that "all corporate guests" be offered their choice of two types of breakfast, and prohibited the adding of gratuities to checks for meals other than for room service. In the earlier agreement, Moon was allowed to use the restaurant's facilities "to produce breakfast items for sale in the restaurant" without incurring a pecuniary lease obligation or having to pay a utilities fee. The subsequent agreement made Moon responsible for payment of the monthly gas bill and the dishwasher lease. It provided that Moon eventually would be responsible for the electricity bill beyond a designated figure. The specific operational requirements and the very generous terms to which Juniper's Restaurant was subject are explained partly by Kendrick's testimony that "Mr. Krukonis felt that it was necessary to keep the restaurant in operation as far as breakfast was concerned because the breakfast meal is an integral part of the corporate rate" for those companies on Hotel's "directory list." It is undisputed that Hotel did a large corporate business. The contractual matters to which Hotel, Juniper's Restaurant, and Moon agreed distinguish the instant arrangement from the "optional privilege" presented in Jenkins v. Peddie, 145 So.2d 729, 730-31 (Fla. 1962), where the certificate holder of a taxicab franchise was found not to be a "contractor" passing along to "other independent individuals" his duty to operate at least a certain number of taxicabs. See City of Orlando v. Brown, 626 So.2d 1102 (Fla. 1st DCA 1993) (reversal of finding of statutory employment absent evidence that city was obligated to perform federally-funded, city-administered home repairs in the course of which claimant/carpenter was injured).
In Orama, we stated that "the very purpose of section 440.10 is to assure that a general contractor will retain financial responsibility for injuries to those employees working a contract job, even though an independent contractor performs part or all of the undertaking." 552 So.2d at 926; Belford Trucking Co. v. Pinson, 360 So.2d 1140, 1142 (Fla. 1st DCA 1978). The JCC found that just such an "independent contractor arrangement" existed between Hotel and *665 Moon. The statute makes no distinction between "contractor" and any specific kinds of contractors, Magarian v. Southern Food Distributors, 146 Fla. 773, 1 So.2d 858 (1941), and the Florida Supreme Court in Motchkavitz declined to recognize the claimant's argument based on an attempt to distinguish between independent and general contractors. 407 So.2d at 914. In summary, we believe that our holding comports with the legislative intent in section 440.10, Florida Statutes, that a person like Claimant, performing a contractor's work, even as an employee of a subcontractor "engaged on such contract work," be entitled to workers' compensation protection with the primary employer in those instances where the subcontractor has not provided coverage. Roberts, 538 So.2d at 60.
Accordingly, the order is REVERSED and the cause REMANDED for further proceedings.
BARFIELD and MINER, JJ., concur.