649 So.2d 257 (1994)
SMALLEY TRANSPORTATION COMPANY, Appellant,
v.
MARKS, GRAY, CONRAY & GIBBS and Tracy I. Arpen, Appellees.
No. 93-1923.
District Court of Appeal of Florida, First District.
December 29, 1994.
Kennan George Dandar of Dandar & Dandar, P.A., Tampa, for appellant.
John A. Devault, III, Timothy J. Corrigan, and Jane A. Lester of Bedell, Dittmar, DeVault & Pillans, P.A., Jacksonville, for appellees.
PER CURIAM.
In this appeal from a final summary judgment in a legal malpractice action, appellant *258 Smalley Transportation Company contends that the trial court erred in granting summary judgment in favor of the law firm of Marks, Gray, Conroy & Gibbs and attorney Tracy I. Arpen. Appellant further contends that the trial court erred in denying appellant's cross motion for summary judgment. We agree that the trial court erred in granting appellees' motion for summary judgment, but disagree with appellant's contention that it was entitled to summary judgment. Accordingly, we affirm in part, reverse in part and remand for further proceedings.
Appellant, Smalley Transportation Company, is a commercial carrier trucking company with a trucking terminal in Jacksonville. Smalley is in the business of transporting commercial goods for various companies and business entities. Smalley's job was to deliver goods from "point A" to "point B." Less than three to five percent of the shipments, however, traveled from point A to point B without passing through a Smalley terminal. In his deposition testimony, Richard T. Skillinger, president and chief executive officer of Smalley, stated that Smalley used a standard bill of lading which established its contractual relationship with its customers. The standard bill of lading used by Smalley states in pertinent part:

CONTRACT TERMS AND CONDITIONS
Sec. 1. (a) The carrier or the party in possession of any of the property described in this bill of lading shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.
As stated by Skillinger, these are the
terms and conditions as outlined by the National Motor Freight Classification, which is a governing tariff outlining general rules and regulations under which the shipments are to be moved.
Skillinger also stated, however, that the "majority of the forms are generated by the customers," and that there might be some variation in the forms depending on the individual customer. Examples of possible variations would include: terms of payment; terms of handling; more stringent responsibilities such as protection from freezing, transit time needs, and hour of service needs; and handling valuable government shipments that require special security, i.e., having extra employees "ride as a shotgun," or having trucks travel in convoys. Skillinger could not recall if Smalley ever hired guards to accompany drivers in order to protect valuable shipments, but admitted that it was possible. As for the drivers, Skillinger stated that Smalley used subcontractors or independent contractors to pick up and deliver the freight, i.e., drive the trucks, and sometimes used subcontractors as a substitute for dock labor in its three terminals.
Smalley hired the security company of Adam Security to guard its Jacksonville facility and personnel on weekends. The terminal is open 24 hours a day and is staffed by Smalley personnel except for Friday evening to Sunday evening. "In reality," Skillinger said, the Adam Security personnel "substitute for our employees on weekends when the employees are not working." The security guards record the entrance and exit of vehicles, answer telephones, and occasionally give instructions to drivers as to what trailers to take.
William Lane was a security guard employed by Adam Security. On Friday, March 28, 1987, Lane was injured when, while attempting to close a rolling fence gate, one side of the gate fell on top of him, resulting ultimately in the amputation of his leg. Lane was compensated through workers' compensation coverage provided by Adam Security. Lane, however, brought suit against Smalley and others alleging negligent maintenance of the security gate. In a negotiated settlement, Smalley and the other defendants agreed to pay damages of $500,000.00, the apportionment of which was to be determined by jury trial. After the settlement was reached, but prior to trial, Smalley urged its attorneys, the appellees, to move to amend the pleadings to assert the affirmative defense of workers' compensation immunity. Appellees so moved the court, but their motion was denied as being untimely filed. The jury found appellant Smalley 100 percent liable for the damages. The trial court's denial of Smalley's motion to amend the *259 pleadings to assert the defense of workers' compensation immunity was affirmed by this court without opinion. Smalley Transp. Co. v. Mathews Corp., B.J. McCormack Co. Inc., 570 So.2d 1308 (Fla. 1st DCA 1990). Appellant then sued appellees for legal malpractice, alleging negligence in appellees' failure to timely assert the workers' compensation immunity defense, which proceedings gave rise to the instant appeal.
After review of the deposition testimony and affidavits, the trial court granted summary judgment for appellees, finding as a matter of law, that Smalley was merely an "owner" of property contracting for security services rather than a contractor subletting a portion of its contractual obligations. Alternatively, even assuming Smalley to be a "contractor" under chapter 440, the trial court found that Smalley did not sublet to Adam Security a portion of its contractual obligations to its customers. The trial court found Smalley's primary and essential obligation to its customers consisted of truck transportation and delivery of cargo. The court found that the hiring of security guards to protect the trucking terminal was merely incidental to the performance of Smalley's contractual obligations, and not a subletting of any contractual obligation.
The relevant portion of Section 440.10, Florida Statutes, states in part:
In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
In the proceedings below, appellant asserted that workers' compensation immunity was a complete defense to the claim filed against it by Mr. Lane, and that it would not have entered into a settlement agreement had the affirmative defense been brought to its attention and timely pled. On motion for summary judgment, appellees contended that the affirmative defense of workers' compensation immunity was not a viable defense on the facts of the case.
In order to prevail on motion for summary judgment, appellees were required to demonstrate that appellant Smalley, in hiring Adam Security to guard its Jacksonville terminal, did not sublet any portion of an obligation arising primarily out of contract with its customers. Specifically, appellees were required to prove the terms of Smalley's contractual obligations to its customers, and further prove that no part of these contractual obligations was sublet to Adam Security. The depositions and affidavits submitted to the trial court in support of appellees' motion for summary judgment are notable primarily for their failure to prove the terms and conditions of Smalley's contractual obligations to its customers. Having failed to prove the terms of Smalley's contractual obligations, appellees therefore failed to prove that appellant did not sublet to Adam Security any part of its contractual obligations.
It is undisputed that appellant Smalley generally used a bill of lading to establish some of the general terms of its contractual relations. However, as previously recognized by this court, the bill of lading and operative tariffs do not necessarily embody the entire contract of the parties.
Where, however, the carrier has accepted goods for carriage, or has agreed to furnish cars or loading space or to perform any other specific item of service, a contractual relationship arises, the obligations of which are reciprocal, and either party may sue in the event of a breach. (emphasis added).
Roberts v. Gator Freightways, Inc., 538 So.2d 55, 58 (Fla. 1st DCA 1989) (citing 13 Am.Jur.2d Carriers § 231 (1964), approved, 550 So.2d 1117 (Fla. 1989)). In this context, appellees' (and the trial court's) reliance on the contract for security guard service between Smalley and Adam Security is of little persuasive value. Even if the contract establishes that Adam Security was to provide only guard service, such does not address the question whether Smalley was under contractual obligation to provide guard service. *260 Similarly, the trial judge's reliance on Lane's deposition for the assertion that Lane was employed only in the capacity of a security guard is unavailing.[1] It is also noteworthy that in moving for summary judgment, appellees deposed not one customer of Smalley in an attempt to establish the extent of Smalley's contractual obligations with its customers. Nor did the appellees procure through discovery a written contract of shipping between Smalley and any one of its customers. Such failure of appellees is indicative of the inadequacy of their motion for summary judgment.
Further favoring appellant Smalley's position are the tariff provisions applicable to Signature Security Service shipments.
(a) When Signature Security Service is requested by the shipper and the signature and tally record is furnished, carrier or his agent will require each person responsible for the shipment such as the terminal manager, pickup, delivery and road drivers, and dock foreman to personally sign the signature and tally record and will secure signature in the space provided on the form from the consignee or his agent on delivery.
* * * * * *
(c) In terminal areas, the vehicle containing the Signature Security Service shipment must be under the control of the last person signing the DD Form 1907 or any other form furnished by the shipper.
Thus, if the security guards, such as William Lane, performed the function described in the Signature Security Service provisions, the guards were then performing a portion of Smalley's contractual and statutory obligations to its customers. The deposition testimony of Skillinger indicated that the security guards took the place of Smalley's regular employees on weekends. The reasonable inference, to be construed against the movant, is that the security guards performed the function described in the Signature Security Service agreements, i.e., signing the Signature Security Service agreement, when logging in trucks. In light of appellees' failure to satisfy their initial burden of demonstrating the absence of a factual dispute as to whether Smalley sublet a portion of its contractual obligations to its customers, the trial court erred in granting summary judgment for appellees.
Turning now to appellant's claim that the trial court should have granted summary judgment in its favor, we find that appellant's motion for summary judgment suffered from a deficiency similar to appellees' motion. Specifically, in order to prevail on motion for summary judgment, appellant was required to prove the existence of a specific term or condition of contract, and further prove that the obligation to perform this term or condition was, indeed, sublet to Adam Security. Appellant, however, failed to prove that some part of its contractual obligations was sublet to Adam Security. For example, appellant failed to prove that security guard Lane was charged with performance of the tasks described in the Signature Security Service tariff provisions, although its proof would not be limited to this specific example.
In summary, we reverse the trial court's order of final summary judgment for appellees and affirm the trial court's denial of appellant's motion for summary judgment.
AFFIRMED in part, REVERSED in part and REMANDED for further consistent proceedings.
MINER and LAWRENCE, JJ., concur.
BENTON, J., concurs with opinion.
BENTON, Judge, concurring.
A "commercial carrier trucking company ... in the business of transporting commercial goods for various companies," ante p. 258, necessarily undertakes to protect its cargoes against theft. In order "to deliver goods from `point A' to `point B,'" id., a carrier must see to it that its shippers' goods are not purloined before they reach "point B." While he worked as a security guard, *261 William Lane helped protect not only the warehouse premises and the carrier's employees and equipment, but also all cargo on the premises. In this way his work contributed to Smalley Transportation Company's acquittal of its contractual obligations to its shippers, in a manner analogous to the labor of the "street `hawkers'" held to be statutory employees in Miami Herald Publishing v. Hatch, 617 So.2d 380 (Fla. 1st DCA 1993), accord Antinarelli v. Ocean Suite Hotel, 642 So.2d 661 (Fla. 1st DCA 1994).
NOTES
[1] Moreover, the trial court's reliance on Lane's deposition testimony is also misguided for the reason that the deposition was taken in connection with the earlier tort action rather than the instant legal malpractice case. The questioning of Lane, therefore, was not probative of the critical question in this appeal  whether Smalley sublet a contractual obligation to Adam Security.