693 So.2d 1126 (1997)
Dawn RABON, Appellant,
v.
INN OF LAKE CITY, INC., Appellee.
No. 95-4346.
District Court of Appeal of Florida, First District.
May 22, 1997.
*1127 Edna Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach; David D. Guiley of Maher, Gibson & Guiley, P.A., Orlando, for Appellant.
George G. Rasky of Granger, Santry, Mitchell & Heath, P.A., Tallahassee, for Appellee.
VAN NORTWICK, Judge.
Dawn Rabon, who slipped and fell while performing her duties as a security guard at a Holiday Inn owned by appellee, Inn of Lake City, Inc. (the Inn), appeals a final summary judgment entered in her negligence suit against the Inn. At the time of her fall, she was employed by Wells Fargo Guard Services, Inc. and was assigned to work as a security guard at the Holiday Inn. Finding that the Inn had an "obligation to its patrons to provide a reasonably safe and secure environment... [and] that the obligation was sublet to Wells Fargo," the trial court entered summary judgment on the sole basis that the Inn was the statutory employer of Rabon pursuant to section 440.10(1)(b) and, thus, was immune from civil liability to Rabon by virtue of section 440.11, Florida Statutes (1991). We conclude that the subcontracting of a hotel's common law duty to provide safe premises for its guests is not a basis for the creation of statutory employer status under section 440.10(1)(b). Further, we find a lack of an evidentiary basis to support a conclusion that a contract to provide guard service, either express or implied *1128 in fact, existed between the Inn and its guests. Because there is no evidence of such a contractual obligation sublet to Wells Fargo, the trial court erred in granting summary judgment based on statutory employer immunity under section 440.10(1)(b). Accordingly, we reverse and remand for further proceedings.

Factual and Procedural Background
Wells Fargo provided services to the Holiday Inn pursuant to a contract. Although this contract is not a part of the record before us, it appears to be conceded by the Inn that Wells Fargo was acting as an independent contractor in providing services at the Holiday Inn. Wells Fargo paid Rabon's salary and provided workers' compensation insurance. There is no evidence in the record as to any express oral or written contract between the Inn and its guests or any circumstances which might give rise to a contract implied in fact between the Inn and its guests which imposed on the Inn a contractual obligation to provide guard services.
The record does reflect that the Wells Fargo security guards at the Holiday Inn patrolled the premises and were to observe and report unusual happenings or circumstances. According to the testimony of the operations manager of Wells Fargo, the guards' presence was intended to provide a safe and secure environment for guests and employees of the Holiday Inn. In addition, on occasion, the night security guards would perform services which were performed by regular Holiday Inn employees during the day, such as taking linens to a room. However, the extent to which these services were performed and the circumstances under which they were performed are in dispute.
Rabon fell in descending an outside unenclosed staircase when she was patrolling the motel property at about 2:30 AM. She testified in deposition that her foot slipped on an object on the step. The record reflects that after the accident a small, squeeze-type package of mayonnaise was discovered on the side of the steps. The package had broken open and had a heel mark on it. After her fall, Rabon was required to undergo two back surgeries. She was paid workers' compensation benefits by Wells Fargo's insurance carrier. Thereafter, she filed suit against the Inn, contending that she was a business invitee on the Inn's premises and that the Inn had negligently failed to exercise its duty of reasonable care for the safety of invitees. The Inn answered and raised several affirmative defenses, including that it was entitled to immunity under chapter 440, Florida Statutes, as Rabon's statutory employer.
The trial court granted final summary judgment in favor of the Inn, ruling that the Inn was immune from civil liability as Rabon's statutory employer under sections 440.10 and 440.11, Florida Statutes. In its order granting summary judgment the trial court found, in pertinent part, as follows:
1.... Defendant contends that it is immune from civil liability to the plaintiff by virtue of section 440.11 et seq., Florida Statutes, as it was the statutory employer of plaintiff, pursuant to section 440.10, Florida Statutes, at the time of the incident described in the Complaint. Whether defendant meets the definition of "statutory employer" depends on a factual determination as to (1) whether defendant has incurred a contractual obligation to a third party, such as its hotel patrons, (2) a part of which obligation defendant had sublet to plaintiff's employer, Wells Fargo.
2. Regarding the first prong, as reflected in the case law construing and applying section 440.10, Florida Statutes, the "contractual obligation" which has been sublet out to another need not be an express provision contained in a written contract.... As applied to the present case this means that under the law it is not necessary that the defendant/Holiday Inn had an express written contractual provision with its patrons to provide security guards on the premises.
The Court finds that in the instant case the defendant had an implied contractual obligation to its patrons at the Holiday Inn to provide a reasonably safe and secure environment....
* * * * * *
4. Regarding the second prong of the test, it is undisputed that the defendant *1129 had contracted with Wells Fargo for the latter to provide services at the Holiday Inn. It is clear from the depositions of record that the duties and responsibilities of a security officer, such as the plaintiff, encompassed both security and safety issues.... Consequently, with respect to defendant's obligation to its patrons to provide a reasonably safe and secure environment, the Court finds that the obligation was sublet to Wells Fargo, and certainly was so after midnight at the Holiday Inn. (Citations omitted).
This appeal followed.
Statutory Employer under Section 440.10
Section 440.10, Florida Statutes (1991), provides in pertinent part:
(1)(a) Every employer coming within the provisions of this chapter ... shall be liable for, and shall secure, the payment to his employees, ... of the compensation payable under ss. 440.13, 440.15, and 440.16.
* * * * * *
(b) In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Section 440.11(1) provides in pertinent part:
The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee..., except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death ...
To be included within the definition of "statutory employer" under section 440.10, the Inn must show that it was engaged in performing "contract work" for its hotel patrons and that it sublet a part of the contract work to Wells Fargo, whose employee, Rabon, was injured. Antinarelli v. Ocean Suite Hotel, 642 So.2d 661, 662 (Fla. 1st DCA 1994); Miami Herald Pub. v. Hatch, 617 So.2d 380, 382-83 (Fla. 1st DCA 1993). For the Inn to be regarded as engaging in contract work, its "primary obligation in performing a job or providing a service must arise out of a contract." Roberts v. Gator Freightways, Inc., 538 So.2d 55, 57 (Fla. 1st DCA), approved, 550 So.2d 1117 (Fla.1989); see also Antinarelli, 642 So.2d at 663. The contractual obligation need not be pursuant to an express provision contained in a written contract, Antinarelli, 642 So.2d at 663, but may either be an express or implied contractual obligation, Delta Air Lines, Inc. v. Cunningham, 658 So.2d 556, 557 (Fla. 3d DCA 1995), rev. denied, 668 So.2d 602 (Fla.1996). The issue presented here is whether the undisputed material facts in the record are sufficient to establish that the Inn had a contractual obligation to provide guard services for its patrons and that it subcontracted such work to Wells Fargo.

The Inn's Contractual Obligation
On appeal the Inn argues, as it did below, that as a part of its contractual obligation to a hotel patron an innkeeper impliedly represents that its premises are in a reasonably safe condition, citing Rubey v. William Morris, Inc., 66 So.2d 218, 221 (Fla.1953), and that the subcontracting of this implied contractual obligation will invoke the statutory employer provisions of sections 440.10 and 440.11, citing Antinarelli, 642 So.2d at 663, and Delta Air Lines, Inc., 658 So.2d at 557. Thus, the Inn asserts, the trial court correctly entered summary judgment.
Rabon contends, however, that the Inn's obligation to provide safe premises arises out of the innkeeper's common law duty to maintain safe premises, citing Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. *1130 1983), and Hardy v. Pier 99 Motor Inn, 664 So.2d 1095 (Fla. 1st DCA 1995), rather than a contractual duty between the Inn and its patrons. Thus, Rabon argues that, since the duty to provide safe premises is a duty imposed by the common law and not a contract, the Inn did not subcontract "contract work" to Wells Fargo and could not be a "statutory employer" immune from suit under sections 440.10 and 440.11.
An innkeeper's duty to protect a guest from injury may be a contractual duty or a duty imposed by law by reason of the relation of the parties. See generally 40 Am.Jur.2d, Hotels, Motels and Restaurants, § 81 (1968). The Florida cases analyzing an innkeeper's duty typically arise in the context of a tort action and discuss an innkeeper's duty of reasonable care for the safety of its guests, the breach of which gives rise to a cause of action for negligence. For example, in Hardy v. Pier 99 Motor Inn, 664 So.2d at 1097, this court stated that the law imposes on a motel operator a continual legal duty to its patrons to use ordinary care to keep the premises in a reasonably safe condition and protect them from harm due to reasonably foreseeable risks of injury. Similarly, in Rubey, 66 So.2d at 221, the court found that "by the very nature of the relationship between innkeeper and guest, the [innkeeper] impliedly represented [the hotel premises were] in a reasonably safe condition." Rubey, however, also involves a suit for negligence, not a suit for breach of contract. It seems clear that the Rubey court, although speaking in terms of a "represented" obligation, was ruling that an implied duty of reasonable care arose by virtue of the relationship of the parties which would permit a suit for negligence for breach of that duty.
By contrast, in Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, 100 (Fla. 3d DCA 1980), the Third District addressed a cause of action for breach of contract for failure on a landlord's part to provide security guards for protection of tenants. In Holley, the court recognized that, where the evidence shows that the landlord had a prior practice of providing armed guards and that a part of the tenant's rent may have been expressly for security, a genuine issue was created concerning the landlord's contractual responsibility to provide that protection. See also Cooper v. IBI Sec. Service of Florida, Inc., 281 So.2d 524 (Fla. 3d DCA), cert. denied, 287 So.2d 95 (Fla.1973).

Duty Implied in Law is Not "Contract Work"
We agree with Rabon that because "contract work" must be sublet to form the basis for statutory employer immunity under section 440.10(1)(b), the statute requires that the contractor must sublet an obligation that is a part of a contract, express or implied in fact, and not an obligation purely imposed by statutory or common law. Woods v. Carpet Restorations, Inc., 611 So.2d 1303 (Fla. 4th DCA 1992). Although neither party has directed us to a Florida case directly addressing the issue raised here, we read the language of section 440.10(1)(b) as an expression of legislative intent that the sublet work must be an obligation included within a promissory agreement between the contractor and a third party. By its own terms, the statute applies only "[i]n case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors ...." § 440.10(1)(b), Fla. Stat. (1991). Clearly, the legislature could have granted a broader statutory employer immunity by creating statutory employer status in any circumstance in which a business engages a subcontractor to perform a part of the business' regular trade or work.[1] The language of *1131 subsection 440.10(1)(b), however, is expressly limited to circumstances in which a contractor sublets performance of a contractual obligation that it owes to a third party. The Florida Supreme Court explained the necessity for a true contract as the basis for statutory employer immunity in Jones v. Florida Power Corp., 72 So.2d 285, 289 (Fla. 1954), as follows:
[T]he clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. To "sublet" means to "underlet", Webster's New International Dictionary; in the context in which it is here used, the effect of subletting is to pass on to another an obligation under a contract for which the person so "subletting" is primarily obligated. The Corporation, under the facts here present, had no primary obligation under a contract which it was passing on to another. It was not, then, a "contractor" within the meaning of the Act.
We find persuasive the reasoning of the Fourth District in Woods v. Carpet Restorations, Inc., 611 So.2d at 1304. The Woods court held that, because the obligation of a condominium association to maintain and manage condominium property did not arise out of a contract but was "purely statutory," the association's contract with a property management company to perform certain of these statutory duties did not make the association the statutory employer of the management company's employee injured while vacuuming the premises. Id. Just as statutory employer status could not arise in Woods out of the subcontracting of a purely statutory duty, it cannot arise out of the subcontracting of a duty created by the common law.
Our holding here is also based in part on the differences between contracts implied in fact and contracts implied in law. For the purposes of section 440.10(1)(b), we find no difference in the legal effect of an express contract and a contract implied in fact. The difference in these types of contracts lies in the manner by which the parties manifest assent to the contract. Restatement (Second) of Contracts § 4, cmt. a (1982). When a contract is express, the parties have set forth their agreement either verbally or in writing. As defined in Black's Law Dictionary 323 (6th Ed.1990) (citations omitted),
[a]n express contract is an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.
In a contract implied in fact the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of performance. Restatement (Second) of Contracts § 4, cmt. a (1982). In inferring a contract implied in fact, a court should give to the implied contract "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto." Bromer v. Florida Power & Light Co., 45 So.2d 658, 660 (Fla.1949).
A contract implied in law, however, is fundamentally a different legal concept than either a contract implied in fact or an express contract. While it may sometimes be difficult to distinguish between a contract implied in law (or quasi-contract) and a contract implied in fact, as a general rule, unlike a true contract based upon the express or apparent intention of the parties, a quasicontract is not based on a promissory agreement or the apparent intention of the parties to undertake the performance in question. Restatement (Second) of Contracts § 4, cmt. b (1982). Quasi-contracts or contracts implied in law
are obligations imposed by law to prevent unjust enrichment. The essential elements for an action under this theory are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.
Rite-Way Painting & Plastering, Inc. v. Tetor, 582 So.2d 15, 17 (Fla. 2d DCA 1991) (citations omitted). Quasi-contracts, therefore, *1132 are obligations created by the law for reasons of justice, not by the express or apparent intent of the parties. Thus, it may be said that obligations of this type should not properly be considered contracts at all, but a form of the remedy of restitution. See Restatement (Second) of Contracts § 4, cmt. b.
Based upon the above distinctions between duties imposed in law and duties arising out of a contract and upon the clear language of subsection 440.10(1)(b), we conclude that a duty implied in law or a "quasicontract" cannot form the basis for a statutory employment relationship. Instead, sections 440.10(1)(b) and 440.11 contemplate a true contract between the contractor and a third partyeither express or implied in fact.

No Evidence to Support Contract Implied in Fact
The trial court did not find that an express contract existed between the Inn and its guests and we find no evidence of an express contract in the limited record before us. In ruling as it did, the trial court relied upon and quotes from 29 Fla. Jur.2d Hotels, Motels and Restaurants § 19 (1981), for the proposition that "in the absence of a specific contract, the law implies that the innkeeper contracts to furnish services ... giving reasonable attention and care to the convenience, comfort and safety of its guests." However, the part deleted from this quotation states that the services implied as terms to the contract must be "compatible with the standing or character of the place, the prices paid, and the class of people invited to become guests...." Id. Thus, whenever a court undertakes an inquiry regarding the implied contractual understanding between a hotel and its guests, it must consider such factual issues as the expectations of the guests based upon the services and practices typically provided by a particular class of hotel or any practices and services of the particular hotel from which a guest could reasonably expect a hotel to provide a service because it had been provided in the past. Antinarelli, 642 So.2d at 663.
In the instant case, the contract which the trial court implied was not based upon any evidence. Even though a contract implied in fact may exist between an innkeeper and its guest, the scope of the implied contract is a matter of proof. Here, there is a complete dearth of evidence regarding the terms of any contract between Holiday Inn and its patrons. There are certainly no facts in the record at the current stage of the litigation which might establish that the Inn had a contractual obligation to provide security guard service.
The terms and scope of any contract between the Inn and its guests is critical because, as this court recognized in Antinarelli, 642 So.2d at 663, the nature of the contract between the contractor (the Inn) and the third party (guests at the Inn) controls the resolution of the statutory employment relationship. More importantly, it must be shown that the Inn's obligation to provide safe premises is one which arises primarily from its contract with its customers, Roberts, 538 So.2d at 57, as opposed to an obligation imposed by virtue of the Inn's general duty to exercise reasonable care.
In Smalley Transp. Co. v. Marks, Gray, Conroy & Gibbs, 649 So.2d 257 (Fla. 1st DCA 1994), we discussed the evidence required to obtain summary judgment based on statutory employer immunity that arose from the alleged existence of a contractual duty to provide guard service which was implied in fact. There, Smalley Transportation Company, a commercial carrier trucking company, hired Adams Security to guard its facility on weekends. A security guard employed by Adams Security was injured while working at Smalley and received workers' compensation benefits, through coverage provided by Adams Security. In concluding that the record did not support summary judgment on the statutory employer issue, we explained:
[A]ppellees' (and the trial court's) reliance on the contract for security guard service between Smalley and Adams Security is of little persuasive value. Even if the contract establishes that Adams Security was to provide only guard service, such does not address the question whether Smalley was under contractual obligation to provide *1133 guard service.... It is also noteworthy that in moving for summary judgment, appellees deposed not one customer of Smalley in an attempt to establish the extent of Smalley's contractual obligations with its customers. Nor did the appellees procure through discovery a written contract of shipping between Smalley and any one of its customers. Such failure of appellees is indicative of the inadequacy of their motion for summary judgment.
* * * * * *
[I]n order to prevail on motion for summary judgment, appellant was required to prove the existence of a specific term or condition of contract, and further prove that the obligation to perform this term or condition was, indeed, sublet to Adams Security.
Id. at 259-60.
Just as the party seeking summary judgment in Smalley, here, the Inn failed to establish the terms of a contract with its customers which was either express or implied in fact. The fact that the Inn provided security guards ostensibly to ensure the safety of its guests does not determine that the guard service was a contractual duty the Inn owed to its customers.
We find that Antinarelli v. Ocean Suite Hotel, 642 So.2d 661 (Fla. 1st DCA 1994) and Delta Air Lines, Inc. v. Cunningham, 658 So.2d 556 (Fla. 3rd DCA 1995), upon which appellee relies, are distinguishable from the instant case. In Antinarelli, this court held that a hotel, which included in its room rate a voucher entitling guests to a complimentary breakfast at a restaurant on its premises, was the statutory employer of the restaurant and its employees. The Antinarelli court found that the hotel impliedly contracted to provide breakfast to its patrons. The contract was one implied in fact based on evidence that the patrons were given vouchers for a free breakfast as part of the hotel's room tariff. Thus, the facts in Antinarelli clearly demonstrated the existence of a contractual obligation between the hotel and its patrons which was sublet to the restaurant. Unlike Antinarelli, the record in the instant case lacks any similar evidence of a contractual obligation between the Inn and its patrons.
In Delta, Delta Air Lines subcontracted cleaning and servicing work to Intex which was previously performed by Delta personnel. In holding that Delta Air Lines was a statutory employer of the plaintiff, the court found that "Delta has an express and implied contractual obligation to its customers to maintain its equipment properly, and it subcontracted part of that overall responsibility to Intex." Delta, 658 So.2d at 557. Although the Delta opinion does not set forth the facts on which the court found an "express and implied contractual obligation," we must presume the record contained an adequate factual basis for this finding. In the instant case, however, no facts have been produced which would support a similar finding.
REVERSED and REMANDED for proceedings consistent with this opinion.
WOLF, J., concurs.
BOOTH, J., dissents.
BOOTH, Judge, dissenting.
I respectfully dissent and would affirm the judgment below.
NOTES
[1] For example, the Louisiana Workman's Compensation Law provides in pertinent part, as follows:

When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; ...
La.Rev.Stat. § 23:1061(A) (Supp.1997). See also Kirkland v. Riverwood Inter. USA, Inc., 681 So.2d 329 (La.1996).