ERVIN, J., dissenting.
I cannot agree that the order of the judge of compensation claims (JCC) should be affirmed on the ground that the Marseilles Hotel was not the statutory employer of the claimant, Valentin Sanchez. In my opinion, the JCC too narrowly confined her review of the issue by essentially deciding that the Marseilles had no implied contractual obligation to provide food to its guests because there was no agreement by the Marseilles to provide the guests free meals. In so deciding, the JCC failed to take into consideration other evidence of the parties’ conduct from which the existence of an implied contract could be reasonably inferred. A recitation of the facts and the pertinent law is required to explain my position more fully.
Sanchez was a cook at Vittorio’s Restaurant on August 20, 1996, when he injured a finger while preparing food to be served that evening. Vittorio’s was located in and leased the restaurant premises from the Marseilles Hotel. Vittorio’s did not have workers’ compensation insurance, and Sanchez alleged that the Marseilles was his statutory employer pursuant to section 440.10(l)(b), Florida Statutes (1995), which provides:
In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
The status of the Marseilles as a statutory employer depends upon whether, in the words of the statute, it is a “contractor [which] sublets any part or parts of [its] contract work to a subcontractor.” In order for the Marseilles to be considered a contractor, it must have “ ‘incurred a contractual obligation to a third party, a part of which obligation the [contractor] has delegated or sublet to a subcontractor whose employee is injured.’ ” Pullam v. Hercules Inc., 711 So.2d 72, 73 (Fla. 1st DCA 1998) (quoting Miami Herald Publ’g v. Hatch, 617 So.2d 380, 381 (Fla. 1st DCA 1993)). Accordingly, Sanchez was required to prove that the Marseilles had an express or implied contractual obligation to provide food to its hotel patrons, which it delegated to Vittorio’s. See, e.g., Antinarelli v. Ocean Suite Hotel, 642 So.2d 661 (Fla. 1st DCA 1994).
The evidence below established that there was no express contract between the hotel and its guests; the only substantial question is whether a contract implied in fact arose from the parties’ conduct. An implied contract is found when “the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of perfor- *1289 manee.” Rabon v. Inn of Lake City, Inc., 693 So.2d 1126, 1131 (Fla. 1st DCA 1997). Stated otherwise, “[A]n implied contract is one inferred from the conduct of the parties, though not expressed in words.” 17A Am.Jur.2d Contracts § 12 (1991). Another factor to consider is “ ‘the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto.’ ” Bromer v. Fla. Power & Light Co., 45 So.2d 658, 660 (Fla.1949) (on reh’g) (quoting 12 Am. Jur. Contracts § 239, at p. 766).
In discussing the applicability of an implied contractual relationship between a hotel and its guests in particular, the Ra-bón court made the following pertinent observations:
In ruling as it did [finding that the motel was claimant’s statutory employer], the trial court relied upon and quotes from 29 Fla. Jur.2d Hotels, Motels and Restaurants § 19 (1981), for the proposition that “in the absence of a specific contract, the law implies that the innkeeper contracts to furnish services ... giving reasonable attention and care to the convenience, comfort and safety of its guests.” However, the part deleted from this quotation states that the services implied as terms to the contract must be “compatible with the standing or character of the place, the prices paid, and the class of people invited to become guests....” Id. Thus, whenever a court undertakes an inquiry regarding the implied contractual understanding bekueen a hotel and its guests, it must consider such factual issues as the expectations of the guests based upon the services and practices typically provided by a particular class of hotel or any practices and services of the particular hotel from which a guest could reasonably expect a hotel to provide a ser-
vice because it had been provided in the
past.
Rabón, 693 So.2d at 1132 (emphasis added).
The primary evidence submitted to the JCC on the issue of whether the Marseilles had an implied contractual obligation to furnish food on its premises was in the form of documentary evidence. In an advertising leaflet, the Marseilles described itself as a resort hotel, located -in Miami Beach, having 115 guest rooms and studio suites; its ambience as “classicly [sic] art-deco”; its location “[r]eminiscent of the sunbaked shores of St. Tropez or the cosmopolitan ‘je ne sais quois’ of Nice.” One side of the hotel faces Collins Avenue, a major thoroughfare in Miami Beach, and the other, the Atlantic Ocean. The hotel’s amenities include, as also advertised, a concierge service, a lounge, an outdoor swimming pool, a fitness center, as well as a ballroom and meeting facilities. Regarding the service of food specifically, the Marseilles offered “an intimate restaurant ... plus a poolside snack bar and sidewalk café.” Its proprietary interest in the café is further evinced by its greeting: “Enjoy your breakfast served at our sidewalk café.”
Considering the location of the hotel and the services advertised as available to the hotel’s guests, I consider that a reasonable inference arises that a patron would ordinarily expect to be provided considerably more accommodations at a substantially greater rate than one would encounter at, say, a Days Inn or an Econo Lodge situated off an interstate highway. In my judgment, once a guest accepted the hotel’s offer of not just a room, but a room at an adjusted price, with all its advertised amenities, the Marseilles thereupon became obligated to furnish the guest with such a room, including an on-premises res *1290 taurant. The parties’ conduct, particularly applicable to innkeepers and guests, thereby created a binding and enforceable contract.
The following rule and example from Restatement (Second) of Contracts further supports my conclusion: “[I]ntention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance.” Restatement (Second) of Contracts § 4 cmt. a (1981). One of the illustrations offered in support of the comment was:
A, on passing a market, where he has an account, sees a box of apples marked “25 cts. each.” A picks up an apple, holds it up so that a clerk of the establishment sees the act. The clerk nods, and A passes on. A has promised to pay twenty-five cents for the apple.
Id. at illus. 2. Moreover, it is obvious, because of the mutuality of obligations pertaining to all contracts, express or implied, that once the buyer accepted the seller's offer to sell the apple at the price advertised, the seller, as well as the buyer, was bound by the acceptance.
Additional evidence of the Marseilles’s obligation to provide the service of food was a detailed lease agreement executed between the hotel and Vittorio’s Restaurant, wherein it sublet such obligation, requiring, among other things, Vittorio’s to conduct solely the restaurant business on the hotel’s premises and to provide food and beverage service to hotel guests and their invitees, and to serve breakfast from 8:00 a.m. until 12:00 a.m., seven days per week. It also permitted Vittorio’s to use the hotel’s liquor license, and directed Vit-torio’s to use the name of the Marseilles Hotel in any advertising. Moreover, Vitto-rio’s was not responsible for the payment of any taxes or utilities. The totality of all the evidence establishes that Vittorio’s was part of the hotel and that the Marseilles promised its guests that the restaurant would be available for their use.
The evidence presented to the JCC came from both witnesses and documents. Nothing in the witnesses’ testimony contradicts a conclusion that a contract implied in fact existed between the hotel and third parties. As to the essential issue of whether the Marseilles had an implied contractual obligation to provide food to its guests, which it in turn sublet to Vittorio’s Restaurant, the primary evidence for its resolution depended on the written evidence. The construction of contracts or other written instruments is a matter of law; consequently, a reviewing court is not restricted from reassessing the meaning of a contract and, if appropriate, reaching an interpretation contrary to that of the fact finder. See Coleman v. Fla. Ins. Guar. Ass’n, Inc., 517 So.2d 686 (Fla.1988); Pullam v. Hercules Inc., 711 So.2d 72 (Fla. 1st DCA 1998); Fla. Bd. of Regents v. Mycon Corp., 651 So.2d 149 (Fla. 1st DCA 1995). Because an appellate court is considered to be on equal footing with the trial court in interpreting contracts and other documentary materials, its review standard is essentially de novo. See Geiger v. Geiger, 632 So.2d 693 (Fla. 1st DCA 1994).
By deciding that the Marseilles was not the statutory employer, because it had not incurred a contractual obligation to a third party, the judge below distinguished the facts from those in Antinarelli v. Ocean Suite Hotel, 642 So.2d 661 (Fla. 1st DCA 1994). In that case, this court held that a hotel, which included in its room rate a voucher entitling guests to a complimentary breakfast at a restaurant on its premises, had thereby impliedly contracted to provide breakfast to its patrons; thus, the hotel became the statutory employer of the injured worker hired by the restaurant. The- JCC noted that no similar contractual *1291 arrangement had been made between the Marseilles and its guests, and her resolution of the implied contractual issue turned almost exclusively on this factual finding. The fact, however, that no voucher agreement was in evidence does not' end the inquiry into whether an implied contract existed. The JCC altogether failed to take into consideration the representations the Marseilles made in its advertising materials, and the reasonable expectations of its guests as a result of those representations, and whether it could be said that an implied contract arose based upon such conduct.
Accordingly, from my review of the record, which consists primarily of documentary evidence, I conclude that the obligation of the Marseilles to provide the service of food to its lodgers arose from an implied contract. As a result, the hotel must be considered the claimant’s statutory employer. If, on the other hand, the majority is correct in its tacit assumption that the appropriate review standard to be applied to the judge’s order is that of competent, substantial evidence, rather than de novo, it then seems to me that the proper resolution of the issue before us is to remand the case to the JCC for further findings regarding whether an implied contract existed based upon a consideration of all the evidence, particularly the hotel’s representations in its advertisements and the reasonable expectations of the guests, as set forth in this dissent.