IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

PAMELA MITCHELL,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

v.

CASE NO. 1D14-2875

OSCEOLA COUNTY SCHOOL
BOARD, JOHNS EASTERN
CO., INC. AND LIBERTY
MUTUAL COMMERCIAL INS.
EXCESS,

      Appellees.

_____/

Opinion filed March 10, 2015.

An appeal from an order of the Judge of Compensation Claims.
Thomas W. Sculco, Judge.

Date of Accident: August 23, 2011.

Nicholas A. Shannin of the Shannin Law Firm, P.A., Orlando, and Blake J. Lange
of Morgan & Morgan, P.A., Naples, for Appellant.

Pamela J. Cox and Jodi K. Mustoe of Cox & Rouse, P.A., Maitland, for Appellees.


PER CURIAM.

In this workers' compensation case, Claimant appeals the Judge of

Compensation Claims' (JCC's) order dismissing and denying all pending petitions

for benefits (PFBs) based on his determination that Claimant failed to establish an employer-employee relationship with Appellee Osceola County School Board (OCSB). Because it is not clear to us that the JCC employed the proper legal standards in concluding OCSB was not a statutory employer under section 440.10(1)(b), Florida Statutes (2011), we reverse and remand for further proceedings.

On August 23, 2011, Claimant was assisting in a veterinary clinic for Pawsitive Action housed at Harmony High School (HHS) in Osceola County when she was bitten by a dog, suffering injuries. Claimant filed multiple PFBs against Pawsitive Action (a nonprofit organization) as her employer and HHS/OCSB as her statutory or special employer. Claimant voluntarily dismissed all PFBs against Pawsitive Action, which had no workers' compensation coverage.

The litigation of the remaining PFBs was subsequently bifurcated so that the only issue for determination at the final hearing was whether an employer-employee relationship existed between OCSB and Claimant. Claimant raised several legal theories to establish OCSB as her employer, including that of a statutory employer under section 440.10(1)(b), which provides:

> In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and

2

> shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

The JCC rejected all of Claimant's theories, finding, in particular, that OCSB was not Claimant's statutory employer under 440.10(1)(b).

Here, the undisputed evidence showed that Pawsitive Action and HHS had a "business partnership" whereby HHS students in the school's veterinary assisting program were given the opportunity to obtain required clinical hours by assisting with, and observing, veterinary services provided by Pawsitive Action to county residents at a reduced cost. Significantly, OCSB prepared a pamphlet entitled "Harmony High School Veterinary Assisting Pet Clinic" which described the school's program at HHS and the low-cost services available at the veterinary clinic located at HHS, listing the prices of various services for the potential customers of the clinic. This pamphlet was published by OCSB (or its direct agents), and distributed at the front desk of HHS or at the front desk in the guidance department. Although Pawsitive Action set the prices for the described veterinary services and received all the fees for its own use as a non-profit, the pamphlet explains that HHS students "participate in all areas of clinic procedures and provide animal care under the direct supervision of licensed veterinarians, vet technicians, vet assistants or program instructors."

3

In the final order on appeal, the JCC ruled that OCSB was not a statutory employer under section 440.10(1)(b), based on his determination that there was no evidence of a contractual obligation owed to a third party and then sublet to Pawsitive Action by OCSB. Indeed, there is no formal written contract here—either between OCSB and Pawsitive Action or between OCSB and the county residents. It is well established, however, that to satisfy section 440.10(1)(b), the contractual obligation may be implied, and does not need to be pursuant to an express provision in a written contract. See, e.g., Rabon v. Inn of Lake City, Inc., 693 So. 2d 1126, 1129 (Fla. 1st DCA 1997); Delta Air Lines, Inc. v. Cunningham, 658 So. 2d 556, 557 (Fla. 3d DCA 1995), review denied, 668 So. 2d 602 (Fla. 1996). Moreover, a contract may arise from an offer contained in an advertisement. See, e.g., Izadi v. Machado (Gus) Ford, Inc., 550 So. 2d 1135, 1139 (Fla. 3d DCA 1989).

In Antinarelli v. Ocean Suite Hotel, 642 So. 2d 661, 663-64 (Fla. 1st DCA 1994), this court held that a hotel met the definition of a statutory employer for employees of a restaurant not owned or operated by the hotel, where the hotel, as part of its marketing strategy, provided guests with meal vouchers redeemable only at the specified restaurant. Applying our reasoning in Antinarelli, we conclude that here, there was evidence that could establish a contract between OCSB and the community for low-cost veterinary services as evidenced by the pamphlet prepared by OCSB for the obvious purpose of offering veterinary services to county residents.

4

We further conclude that the evidence could support a finding that some portion of OCSB's contractual obligation to county residents for veterinary services, as offered by the pamphlet, was sublet by OCSB to Pawsitive Action, Claimant's employer. In the order on appeal, the JCC concluded that OCSB did not enter into any contracts with the public to provide veterinary services, but in so concluding, the JCC provided insufficient legal analysis as to whether the advertising published by OCSB, ostensibly offering the services of its "business partnership" at specific prices (to be paid by the public, not the students), comprised a contractual offer that could be accepted by members of the public to form a contract. Accordingly, because we are uncertain that the JCC employed the correct standards to reach the ultimate conclusion in this case, we reverse and remand for reconsideration of the evidence using the proper standards.

In reaching this determination, we find no contradiction between our ruling in Rabon and the unique circumstances here involving public school participation in a "business partnership" for the provision of veterinary services. In Rabon, we held that the definition of "statutory employer" under section 440.10(1)(b) requires a contractual obligation, not an obligation under statutory or common law. Although the general obligation OCSB has to county residents to provide educational services derives from constitutional or statutory law, rather than a contract, the specific contractual obligation at issue here concerns the low-cost veterinary services made

5

available to county residents. The educational services otherwise provided by OCSB are thus immaterial to the narrow question of whether OCSB published an advertisement offering veterinary services, to be accepted by members of the public. Accordingly, the JCC's order finding that OCSB is not Claimant's statutory employer under section 440.10(1)(b) is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

MARSTILLER, RAY, and SWANSON, JJ., CONCUR.